1  WRIGHT, FINLAY & ZAK, LLP
   Nichole L. Glowin, Esq. SBN 262932
2  4665 MacArthur Court, Suite 280
   Newport Beach, CA  92660
3  Tel: (949) 477-5050; Fax: (949) 608-9142
4  nglowin@wrightlegal.net

5  Attorneys' for Defendants', OCWEN LOAN SERVICING, LLC and ONEWEST BANK, FSB

6              UNITED STATES BANKRUPTCY COURT

7        EASTERN DISTRICT OF CALIFORNIA- SACRAMENTO DIVISION

8  In re:                                )  Chapter: 13
9                                         )
   GIL MARIANO RAPOSO and JOANNE          )  BK Case No.:  09-27153
10 CAROL RAPOSO,                          )  Adv. Case No.: 15-02095
11                                        )
            Debtors.                      )  **EXHIBITS 1-6 IN SUPPORT OF**
12 _____       )  **DECLARATION OF NICHOLE L.**
   GIL MARIANO RAPOSO and JOANNE          )  **GLOWIN IN RESPONSE TO ORDER TO**
13 CAROL RAPOSO,                          )  **APPEAR REGARDING ATTORNEY**
14                                        )  **REPRESENTATION**
            Plaintiffs,                   )
15                                        )  Date:       September 24, 2015
16 vs.                                    )  Time:       1:30 p.m.
                                          )  Courtroom:  33, Dept. E
17 OCWEN LOAN SERVICING, LLC and          )  Location:   501 I Street
   ONEWEST BANK, FSB,                     )              Sacramento, CA 95814
18                                        )
19          Defendants.                   )
                                          )
20                                        )
                                          )
21                                        )
                                          )
22                                        )
                                          )
23                                        )
                                          )
24                                        )
25 ///
26 ///
27 ///
28 ///

-1-
**EXHIBITS IN SUPPORT OF DECLARATION OF NICHOLE L. GLOWIN IN RESPONSE TO ORDER
TO APPEAR REGARDING ATTORNEY REPRESENTATION**

| Exhibit # | Document | Page # |
|-----------|----------|--------|
| 1 | Home Equity Line of Credit | 3-11 |
| 2 | Deed of Trust | 12-18 |
| 3 | Service Transfer Letter | 19-24 |
| 4 | Electronic Correspondence Confirming Counsel Representation | 25 |
| 5 | Lien Release | 26 |
| 6 | Release Letter | 27 |

**EXHIBITS IN SUPPORT OF DECLARATION OF NICHOLE L. GLOWIN IN RESPONSE TO ORDER TO APPEAR REGARDING ATTORNEY REPRESENTATION**

| Gil H. Raposo and Joanne C. Raposo | IndyMac Bank, F.S.B., a federally chartered savings bank<br>901 East 104th Street, Building B<br>Kansas City, MO 64131 |
|---|---|
| | **Lender's Name and Address**<br>"We," "us" or "our" means the lender named above. |
| **Address**<br>9090 Locust Street<br>Elk Grove, CA 95624 | No. ___ Loan No: __<br>Date __October 2, 2006__<br>Credit Limit $ _51,000.00__<br>Draw Period __120 MONTHS__<br>Repayment Period __120 MONTHS__<br>Maturity Date: __November 15, 2026__ |
| **Borrower's Name and Address**<br>"You" or "your" means each borrower above,<br>jointly and severally. | |

## HOME EQUITY LINE OF CREDIT

*CERTIFIED*

1.  **GENERALLY:** This agreement (the "Agreement") sets out the terms and conditions of your home equity line of credit (the "Line of Credit" or the "Line of Credit Account"). Many of the terms we use in this Agreement have special meanings:

    - The "Line of Credit Account Balance" is the sum of the unpaid principal of loans made under your Line of Credit, plus unpaid but earned finance charges, plus any costs, expenses, and fees that are due.
    - The "Credit Limit" is the maximum amount of principal we ordinarily will allow you to owe us under your Line of Credit at any time.
    - The "Billing Cycle" means the period of time normally covered by monthly periodic statements and includes such period of time even when a statement is not sent because there is no balance on your Line of Credit Account for that period.
    - An "Equity Card" is any credit card we issue to allow you to obtain advances on your Line of Credit.
    - The "Draw Period" is the period during which you may request advances on your Line of Credit.
    - The "Repayment Period" is the period during which you must repay your Line of Credit Account Balance and may not request further advances.

    If any term of this Agreement violates any law or for some other reason is not unforceable, the term will not be part of this Agreement.

2.  **PROMISE TO PAY:** You promise to pay to us, or our order, the total principal of all loans made under your Line of Credit, together with all finance charges, costs, expenses, and fees for which you are responsible under this Agreement. If there is more than one of you, each is jointly and severally liable on this Agreement. This means that we can require any one of you to pay all amounts due under this Agreement, including loans made to any of you, even if in excess of the authorized Credit Limit. Each of you authorizes any other Borrower, on his or her request alone, to cancel the Line of Credit, request and receive advances of principal under your Line of Credit, and to do all actions in connection with the terms of this Agreement. We can release any of you from responsibility under this Agreement, and the others will remain fully responsible hereunder.

3.  **TAX DEDUCTIBILITY:** You understand that we (including our employees and representatives) do not make any representations or warranties to you about the tax consequences -- including the deductibility of interest or fees -- of you establishing or using this Line of Credit, and we will not be liable if interest or fees are not deductible. You should consult a tax advisor regarding the deductibility of interest and charges under your Line of Credit.

4.  **REQUESTING A LOAN:** During the Draw Period, you may request a loan under your Line of Credit by the following methods:

    - You write a special check that we have given you for this purpose (the "Equity Check").
    - You use an Equity Card for purchase transactions or cash advances.
    - You authorize us to pay a designated third person or account.

    You may not obtain advances under the Line of Credit until any rescission period provided by federal law has expired and we are reasonably satisfied that none of the persons entitled to rescind has rescinded this Agreement and the Line of Credit.

Indymac Bank
Multistate HELOC Agreement - I/O Min Pay

Page 1 of 9

VMP Mortgage Solutions, Inc.

1064
03/06

# EXHHIBIT 1

003

When you request a loan, we will advance exactly the amount you request. The smallest amount we will advance to you when you use an Equity Check is $ __250.00__ (the "Minimum Advance"). We will make the advance by depositing the amount in your transaction account, by advancing the money directly to you, or by paying a designated third person or account, depending on how we agree to make the advance. We will record the amount as a loan in your Line of Credit Account.

If you request a loan by writing an Equity Check for less than the Minimum Advance, we may, at our option, grant the request. However, granting the request does not mean we will be required to grant requests for less than the Minimum Advance in the future. We always have the option to deny any such request.

By signing below, each of you requests that we issue each of you an Equity Card. Your use of this Equity Card at automated teller machines is subject to our rules relating to automated teller machine transactions.

We will not ordinarily grant any request for a loan that would cause the unpaid principal balance of your Line of Credit Account to be greater than the Credit Limit listed in this Agreement. We may, at our option, grant such a request without obligating ourselves to do so in the future.

Loans under your Line of Credit may be for any lawful purpose, except that you may not use such loans to pay amounts due on your Line of Credit Account. You will notify us immediately in the event any of your Equity Checks or any of your Equity Cards are lost or stolen.

5.    **HOW PERIODIC FINANCE CHARGES ARE COMPUTED:** Finance charges begin to accrue immediately when we make a loan to you. To figure the finance charge for a Billing Cycle, we apply a daily periodic rate of finance charge to the "average daily balance" of your Line of Credit Account for the Billing Cycle. We then multiply that figure by the number of days in the Billing Cycle. The average daily balance is computed as follows. First we take your Line of Credit Account Balance at the beginning of each day and subtract any unpaid finance charges that are due. Next, we subtract the portion of any payments or credits received that day that apply to the repayment of your loans. (A portion of each payment you make is applied to finance charges.) Then we add any new loans made that day. This gives us the daily balance. Then we add up all the daily balances for the Billing Cycle and divide the total by the number of days in the Billing Cycle. This gives us the "average daily balance."

Until the end of the __1st__ Billing Cycle after the date of this Agreement (the "Initial Rate Period"), the daily periodic rate of FINANCE CHARGE is __0.013671__ % which corresponds to an ANNUAL PERCENTAGE RATE of __4.990__ %. The annual percentage rate corresponding to the periodic rate includes interest and not other costs.

The periodic rate and corresponding annual percentage rate described above are the initial rates assessed under this Line of Credit, and are not based on the formula used for later rate adjustments. Had these rates been based on that formula, the daily periodic rate of FINANCE CHARGE would have been __0.032877__ %, which corresponds to an ANNUAL PERCENTAGE RATE of __12.000__ %. At the end of the Initial Rate Period specified above, the rates will be subject to further adjustments and limitations, as described below under the heading **Variable Rate.**

6.    **VARIABLE RATE:** The "annual percentage rate" referred to in this section is the annual rate that corresponds to the periodic rate applied to the balance as described above. The annual percentage rate may change, and will be __three and 750/1000ths__ percentage points ( __3.750__ ) above the following "base rate:" the highest base rate on corporate loans posted at large U.S. money center commercial banks as published in the Money Rates table of The Wall Street Journal as the Prime Rate. The annual percentage rate may increase if this "base rate" increases. An increase will take effect on the first day of the Billing Cycle. An increase will result in an increase in the finance charge and it may have the effect of increasing your periodic minimum payment. The annual percentage rate will not increase more often than once a month. A decrease will have the opposite effect of an increase described above.

If the base rate changes more frequently than the annual percentage rate, we will always use the base rate in effect on the day we adjust the annual percentage rate to determine the new annual percentage rate. In such a case, we will ignore any changes in the base rate that occur between annual percentage rate adjustments.

This corresponding ANNUAL PERCENTAGE RATE will never exceed 18%, and will never exceed the highest allowable rate for this type of Agreement as determined by applicable state or federal law.

See the Fee Schedule attached hereto and made a part hereof for additional finance charges and other charges on your Line of Credit.

7.  **MONTHLY PAYMENTS:** We will send you a periodic statement for each Billing Cycle in which there is a balance owing under your Line of Credit, or a credit balance, or a finance charge is imposed. The periodic statement will show, among other things, the amount of the minimum monthly payment (the "Minimum Payment") and the date by which it is due. You must pay us at least the Minimum Payment indicated on the periodic statement by the date indicated on the statement.

During the Draw Period, the Minimum Payment is the amount, if any, by which your outstanding principal loan balance exceeds your Credit Limit, plus the greater of: (a) $100.00; or (b) the amount of accrued but unpaid finance charges, late charges, and any other charges authorized by this Agreement, including, without limitation, any expenses or advances incurred by us under the Security Instrument, as described below under the heading Security. During the Draw Period the minimum payment may not fully repay the principal that is outstanding on your Line of Credit.

During the Repayment Period, the Minimum Payment is the amount, if any, by which your outstanding principal loan balance exceeds your Credit Limit, plus: (a) the amount of accrued but unpaid finance charges, late charges, and any other charges authorized by this Agreement, including, without limitation, any expenses or advances incurred by us under the Security Instrument; and (b) _____.8333____ % of the principal balance outstanding on the last day of the Draw Period.

If your Minimum Payment includes any other items authorized by this Agreement, we will so advise you, and the periodic statement will include an itemization of such amounts.

You must send all payments to our attention at the address indicated on the periodic statement.

**FINAL PAYMENT:** On the maturity date listed in this Agreement, you must pay the amount of any remaining Line of Credit Account Balance outstanding. The minimum payments may not be sufficient to fully repay the principal that is outstanding on your Line of Credit. If they are not, you will be required to pay the entire outstanding balance in a single balloon payment.

We are not obligated to refinance your loan at that time, but will consider your request to do so. If you refinance this account at maturity, you may have to pay some or all of the closing costs normally associated with a new loan even if you obtain financing from us.

8.  **ADDITIONAL REPAYMENT TERMS:** If your Line of Credit Account Balance on a payment date is less than the amount of the Minimum Payment, your minimum monthly payment will equal the Line of Credit Account Balance.

You can pay off all or part of what you owe at any time. However, so long as you owe any amount you must continue to make your periodic Minimum Payment.

The amounts you pay will be applied first to any fees and charges you owe other than principal and finance charges, then to any finance charges that are due, and finally to principal.

9.  **SECURITY:** We have secured your obligations under this plan by taking a security interest (by way of a separate security agreement, mortgage, deed of trust, or other instrument (the "Security Instrument") dated _____October  2, 2006_____, in the following property described by item or type (the "Property"): _____9090 Locust Street, Elk Grove, CA 95624_____

Property securing any other loans that you have with us may also secure this Agreement. You may buy property insurance from anyone you want who is acceptable to us.

**Florida:** The state documentary tax due on this Agreement has been paid on the mortgage securing this indebtedness. You agree to pay additional taxes or other charges to the extent such amounts may be imposed by third parties or government authorities in connection with any event of borrowing under this Line of Credit.

You consent to a continuing writ of garnishment effective with respect to any money, salary, or wages as may be owed to us to the fullest extent permitted by law. This consent is given pursuant to Florida Statutes Section 222.11(2).

Indymac Bank
Multistate HELOC Agreement - I/O Min Pay

Page 1 of 9

1064
03/06

005



**Maryland Recordation Tax:** If the entire principal amount of the Line of Credit is not disbursed by us to you upon the execution of this Agreement, you may, at your option, pay Maryland recordation tax on the entire principal amount of the Line of Credit at the time of closing, or you may pay Maryland recordation tax at the time of making of the initial and each future advance from us to you. If you pay the Maryland recordation tax on the entire principal amount of the Line of Credit at the time of closing, your total tax liability will be satisfied, regardless of the amount of any future advances that may subsequently be made by us to you. If, however, you elect to pay the required Maryland recordation tax as advances are made, you have seven (7) days to file with the clerk of the court where the security instrument is recorded a verified statement of the amount of the additional debt incurred as each advance is made, and you must pay the applicable Maryland recordation tax on that additional debt, or you may be penalized by a fine of up to $500.00 or imprisonment of up 6 months for failing to do so as provided in § 14-1012 of the Tax Property Article of the Annotated Code of Maryland.

**North Carolina:** This is an equity line of credit Agreement as defined in Section 45-81 of the North Carolina General Statutes. In accordance with the NCGS Section 75-30, you agree to accept all telephone calls made by us through the use of automatic dialing machines.

**Washington:** If this Agreement is signed by husband or wife, or by two or more unmarried individuals, each irrevocably authorizes us to charge the amount of any Equity Check signed by any one of you against the Line of Credit Account and consents to the use of Property identified in the Security Instrument as security for repayment of all such charges.

10.  **CHANGING TERMS OF THIS AGREEMENT:** Generally, we may not change the terms of this Agreement. However, we may change the terms in the following circumstances:
- If this is a variable rate plan, we may change the index and margin if the original index described in this agreement becomes unavailable. Any new index will have a historical movement similar to the original, and, together with a new margin, will produce a similar interest rate.
- We may make changes that you have agreed to in writing.
- We may make changes that unequivocally benefit you.
- We may make changes to insignificant terms of this Agreement.
- If we are required to send notice of a change in terms, we will send the notice to your address listed in this Agreement. (You should inform us of any change in address.)

11.  **YOUR RIGHT TO TERMINATE YOUR RIGHT TO OBTAIN LOANS:**
A.  **Termination.** You may terminate your right to obtain loans by sending us a written notice that will become effective upon receipt by us. If more than one person signs this Agreement as Borrower, your right to obtain loans may be terminated by written notice pursuant to this paragraph signed by any one or more of such persons. We may also suspend your right to obtain loans pursuant to paragraph fourteen (14) below. You must notify the servicer at the following address or at a different address as required by servicer of your intent to terminate.

P.O. Box 3038, Evansville, IN 47730
_____

B.  **Effect of Termination.** Upon termination of your Line of Credit Account, you must continue to pay the minimum payment due on or before each payment due date until all amounts owed under this Agreement are paid in full. However, you may be required to repay all obligations immediately if we exercise our rights under paragraph thirteen (13) below. You must return unused Equity Checks upon termination. You may be required to pay an account termination fee pursuant to the Fee Schedule attached hereto and made a part hereof.

12.  **COSTS OF COLLECTION:** You agree to pay all our costs, including reasonable attorneys' fees, that we incur in legal proceedings to collect or enforce this debt should you be in default.
**Alabama:** You agree to pay our reasonable and actual attorneys' fees, incurred as a result of your default if the unpaid balance at the time of default exceeds $300.
**Arkansas:** You agree to pay our reasonable and actual attorneys' fees, not to exceed 10% of the amount of principal and accrued interest, if you are in default.
**California:** You agree to pay costs actually incurred for recording, mailing, publishing, and posting legally required notices, costs of postponement, not to exceed $50, litigation or trustee sale fees, and attorneys' fees allowed by law.


006

**Colorado, Missouri, New York, North Carolina, Oklahoma, South Carolina:** You agree to pay our reasonable attorneys' fees not in excess of 15% of the unpaid debt after default and referral to an attorney who is not our salaried employee, together with any assessed court costs and legal expenses, to the extent permitted by applicable law.

**Louisiana:** You agree to pay our costs of collection and reasonable attorneys' fees not in excess of twenty-five (25) percent of the unpaid debt after default and referral to an attorney for collection.

**Maine:** You will pay all costs, including reasonable attorneys' fees and legal costs, incurred by us in attempting to collect, or collecting, what is owed from any real estate that secures this Agreement. You will pay all costs except attorneys' fees incurred by us in attempting to collect, or collecting, any amounts owed from personal property securing this Agreement.

**New Hampshire:** You agree to pay all our costs, including reasonable attorneys' fees that we incur in legal proceedings to collect or enforce this debt should you be in default. If you successfully assert a partial defense or set off, or recoupment or counterclaim, the court may reduce the amount of attorneys' fees we may recover from you. If you prevail in any action or defense against us, you may recover the amount of reasonable attorneys' fees from us.

**Wisconsin:** If you default, you agree to pay our statutory fees and charges and statutory attorneys' fees when and to the extent authorized by the Wisconsin Consumer Act. Fees and charges include, but are not limited to, the disposition of any Property under Wis. Stat. Ann. §422.413, as amended.

13.    **TERMINATION OF LINE FOR CERTAIN DEFAULTS:** We may terminate your Line of Credit Account, require you to pay the entire outstanding balance in one payment, and charge you a termination fee (if provided for in this Agreement) and fees related to the collection of the amount owing, if:

    (1)  You engage in fraud or material misrepresentation in connection with your Line of Credit;

    (2)  You fail to make a payment as required by this Agreement; or

    (3)  Your action or inaction adversely affects the collateral or our rights in the collateral.

    In that instance, we may take other action short of termination, such as charging you a fee if you fail to maintain required property insurance and we purchase insurance. In the District of Columbia, the remedy of acceleration is subject to the provisions of D.C. Code Ann. §28-3312(5).

    Even if we choose not to use one of our remedies when you default, we do not forfeit our right to do so if you default again. If we do not use a remedy when you default, we can still consider your actions as a default in the future.

    In North Dakota, if permitted by applicable law, this obligation may be the basis for a personal action against the promisor or promisors in addition to other remedies allowed by law.

14.    **SUSPENSION OF CREDIT AND REDUCTION OF CREDIT LIMIT:** We may prohibit you from obtaining additional extensions of credit, or reduce your Credit Limit if:

    (1)  The value of the dwelling securing this home equity Line of Credit declines significantly below its appraised value for purposes of this Line of Credit;

    (2)  We reasonably believe you will not be able to meet the repayment requirements due to a change in your financial circumstances;

    (3)  Your payment history on this home equity Line of Credit is not satisfactory;

    (4)  You are in default of an obligation of this Agreement or any agreement securing this Agreement, which shall include, but is not limited to, your ongoing obligation to supply us with information we feel we need to assess your financial condition;

    (5)  A governmental action prevents us from imposing the annual percentage rate provided for in this Agreement;

    (6)  The action of a governmental body adversely affects our security interest to the extent that the value of the security interest is less than 120% of the home equity Line of Credit;

    (7)  The annual percentage rate corresponding to the periodic rate reaches the maximum rate allowed under this Line of Credit (if provided for in this Agreement); or

    (8)  A regulatory agency has notified us that continued advances would constitute an unsafe and unsound practice.

    In the event that we suspend your right to additional advances or reduce your Credit Limit, we will send you notice of our decision at the address listed in this Agreement. (You should inform us of any change in your address.) If we have based our decision to suspend or reduce your credit privileges on an assessment of your financial condition or performance under your Line of Credit, and you believe that your situation has changed, you must request that we re-evaluate your situation, and reinstate your credit privileges.

007



15.    **WAIVERS AND CONSENT:** To the extent not prohibited by law and subject to any required notice and opportunity to cure a default for failure to make a required payment, you waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

Wherunder: In addition, subject to Wis. Stat. Ann. § 422.407, as amended, you will not assert any claims or defenses arising out of your Line of Credit against any person to whom we assign our rights under the Line of Credit (the assignee) if the assignee is unrelated to us, acquires the Line of Credit in good faith and for value, gives you a notice of the assignment, and has not received notice from you of your claims or defense within 12 months after the assignee mailed you the notice of assignment.

To the extent permitted by applicable law, you waive your right to the benefit of exemption as to your Property securing, or to secure, this Agreement. If required by law, we will provide you with separate written statement regarding the waiver of your right of exemption. In Indiana, you hereby waive any rights to relief from valuation and appraisement laws.

16.    **REPRESENTATIONS AND WARRANTIES:** You represent and warrant to us that the information contained in the loan application, in each material respect, was true at the time the loan application was completed.

You represent and warrant to us that the terms of any existing Security Instrument on the Property permit us to enter into this Agreement and that the loans secured by such existing deed of trust or mortgage are current in all material respects and are not in default.

17.    **LOAN CHARGES:** If your Line of Credit Account is subject to a law that sets maximum loan charges, and that law is finally interpreted so that the interest or other charges collected, or to be collected, in connection with your Line of Credit Account exceeds the permitted limits, then: (a) any such charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you that exceeded permitted limits will be refunded to you. We will refund such excess either by reducing the principal owed under your Line of Credit Account or by making a direct payment to you. If we apply the excess toward reducing the principal balance, such reduction shall be treated as a partial prepayment hereunder.

18.    **APPLICABLE LAW:** Federal law applies to certain aspects of this Agreement, including, but not limited to, the interest rate and related charges. The law of the state where you and the Property are located will apply to the extent legally required. If any term of this Agreement violates any law or for some reason is not enforceable, or becomes unenforceable, that term will not be part of this Agreement.

If the Lender listed on page one of this Agreement is not IndyMac Bank, F.S.B., the following provisions apply to this Agreement: This is to inform you that your loan is an alternative mortgage loan within the definition of the Federal Alternative Mortgage Transactions Parity Act of 1982 (the "Parity Act") (12 U.S.C. §§ 3801 et seq.) and the implementing regulations adopted by the Office of Thrift Supervision ("OTS") (12 C.F.R. §§ 560.220, referencing, 560.33, 560.34, 560.35 and 560.210). Your loan will be made by us in accordance with the Parity Act requirements of the OTS rather than the provisions of state law. In this regard, pursuant to the authority granted by the Parity Act and the OTS Parity Act regulations, certain state laws will not apply to this loan.

19.    **CREDIT INFORMATION:** You agree to supply us with whatever information we reasonably feel we need to decide whether to continue this Line of Credit. We agree to make requests for this information without undue frequency, and to give you reasonable time in which to supply the information.

You authorize us to make or have made any credit inquiries we feel are necessary. You also authorize the person or agencies to whom we make these inquiries to supply us with the information we request.

As required by California law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.



008

## ADDITIONAL TERMS

### YOUR BILLING RIGHTS – KEEP THIS NOTICE FOR FUTURE USE
This notice contains important information about your rights and our
responsibilities under the Fair Credit Billing Act.

*Notify Us In Case of Errors or Questions About Your Bill*

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain. If you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings, checking, share draft or other account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

*Your Rights and Our Responsibilities*
*After We Receive Your Written Notice*

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

*Special Rule for Credit Card Purchases*

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or the services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

009

DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE NOTICE SPECIFYING THE CIRCUMSTANCES AND TIME UNDER WHICH YOU CAN EXERCISE THIS RIGHT.

Utah: THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS.

Missouri: ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER) AND US (LENDER) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

Iowa: IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT. YOU MAY REPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY, AND IF THIS IS A CONSUMER CREDIT TRANSACTION YOU MAY BE ENTITLED TO RECEIVE A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

Washington: PLEASE BE ADVISED THAT ORAL AGREEMENTS OR ORAL COMMUNICATIONS TO LOAN MONEY, EXTEND CREDIT, OR FOREBEAR FROM ENFORCING REPAYMENT OF THE DEBT ARE UNENFORCEABLE UNDER WASHINGTON LAW.

NOTICE TO CO-SIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

YOU SHOULD CHECK WITH YOUR LEGAL ADVISOR AND WITH OTHER MORTGAGE LIEN HOLDERS AS TO WHETHER ANY PRIOR LIENS CONTAIN ACCELERATION CLAUSES WHICH WOULD BE ACTIVATED BY A JUNIOR ENCUMBRANCE.

20.   SIGNATURES: By signing below, you agree to the terms of this Agreement and you promise to pay any amounts you owe under this Agreement. You also state that you received a completed copy of this Agreement on today's date.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

_H. Gil Raposo_ (Seal) -Borrower    _Joanne C Raposo_ (Seal) -Borrower
Gil Jr. Raposo                       Joanne C. Raposo
Joan J.

_____ (Seal) -Borrower    _____ (Seal) -Borrower

_____ (Seal) -Borrower    _____ (Seal) -Borrower

Pay To The Order Of
Without Recourse
IndyMac Bank, F.S.B.
By: _Betsy A. Cotton_              1064
                                   03/06
Betsy A. Cotton
Assistant Vice President

## FEE SCHEDULE

You agree to pay the following additional charges in connection with your Line of Credit:

**1.  ADDITIONAL FINANCE CHARGES:**  You agree to pay the following additional FINANCE CHARGES:

| | |
|---|---|
| Application Fee | $ ~12.00 |
| Broker Fee | $ 0.00 |
| Closing Agent Fee | $ 0.00 |
| Flood Certification Fee | $ 12.00 |
| Lender Fees | $ 0.00 |
| Origination Fee | $ 0.00 |
| Points | $ 0.00 |
| Processing Fee | $ 0.00 |
| Tax Service Fee | $ 0.00 |
| (Other) _____ | $ 0.00 |

**2.  OTHER CHARGES:**  You agree to pay the following additional charges:

| | |
|---|---|
| • Appraisal Fee | $ 0.00 [1] |
| • Check Re-order Fee | $ 5.00 |
| • Credit Report Fee | $ 35.19 |
| • Documentation Fee | $ 0.00 |
| • Recording/Filing Fee | $ 0.00 |
| • Title Insurance Fee | $ 0.00 |
| • Title Search Fee | $ 0.00 |
| • (Misc.) _____ | $ 0.00 |

- An annual charge of $75.00.
- A termination fee of $500.00 if terminated within the first three years (not applicable in NC, NJ, NY or SC, lesser of 2% of the line amount or $300 for NM). The fee will not be charged if the account remained unused (meaning that no funds were ever drawn against the credit line other than for closing costs at the time of origination) and/or for other fees outlined on the Fee Schedule included herein) for the entire period from loan closing to the date of payoff.
- A late charge on any payment not paid within 15 days of the payment date of 5% of the payment.
- A charge of $10.00 for any advance made by special check in an amount less than the Minimum Advance (not applicable in New York).
- A charge of $10.00 per credit transaction that is in excess of your Credit Limit.
- A fee of $25.00 for each check, negotiable order of withdrawal or draft you issue in connection with this loan that is returned because it has been dishonored.
- A fee of $10.00 to stop payment.

Other charges will be assessed in accordance with the terms of the Line of Credit Agreement.

This Fee Schedule supplements the Line of Credit Agreement and is incorporated therein. Nothing contained in this Fee Schedule shall be deemed to impair in any way your obligations under the Line of Credit Agreement, the related security agreement, mortgage, or deed of trust, or any other document executed by you concerning the indebtedness evidenced by the Line of Credit Agreement.

_____ (Seal) Gil H. Raposo -Borrower

_____ (Seal) Joanne C. Raposo -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

Indymac Bank
Multistate HELOC Agreement - I/O Min Pay

1064
03/08

Pay To The Order Of
Without Recourse
IndyMac Bank, F.S.B.
By: _____
Betty A. Cotton
Assistant Vice President

011

PLEASE COMPLETE THIS INFORMATION

RECORDING REQUESTED BY:

INDY MAC BANK, FSB

AND WHEN RECORDED MAIL TO:

RETURN TO (NLS)
NATIONS TITLE AGENCY INC.
5370 W. 95th ST
SHAWNEE, KS 66207

Sacramento County Recording
Craig A Kramer, Clerk/Recorder
BOOK **20061005** PAGE **0967**
Check Number 2864
Thursday, OCT 05, 2006 12:25:26 PM
Ttl Pd    $48.00        Nbr-0004542435

MLB/11/1-7

SPACE ABOVE FOR RECORDER'S USE ONLY

Deed of Trust 06NL29502
Title of Document

# THIS AREA FOR RECORDER'S USE ONLY

THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

(Rev. 6/00:hs)                                              (Word/S:/Doc Exam/Cover Sheet)

EXHIBIT 2

012

Loan No:
This document was prepared by Flora Griffin
901 East 104th Street, Building B, Kansas City, MO 64131
Please return this document after recording to:
IndyMac Bank, F.S.B. c/o Document
Management
901 E. 104th Street Building B Suite
400/500
Kansas City, MO 64131

RETURN TO (NLS)
NATIONS TITLE AGENCY INC.
5370 W. 95th ST
SHAWNEE, KS 66207

State of California                                    Space Above This Line For Recording Data

## DEED OF TRUST
(With Future Advance Clause)

06U139502

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is   October 2, 2006
   and the parties, their addresses and tax identification numbers, if required, are as follows:
   TRUSTOR:    Gil H. Raposo and Joanne C. Raposo, husband and wife, as joint
   tenants

   9090 Locust Street, Elk Grove, CA 95624
   ☐ If checked, refer to the attached Addendum incorporated herein, for additional Trustors, their signatures and
   acknowledgments.
   TRUSTEE: Old Republic National Title Insurance Company
   5370 West 95th Street, Overland Park, KS 66207

   LENDER:  IndyMac Bank, F.S.B., a federally chartered savings bank

   155 North Lake Avenue, Pasadena, CA 91101

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to
   secure the Secured Debt (defined below) and Trustor's performance under this Security Instrument, Trustor irrevocably
   grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described
   property:
   THE REAL PROPERTY IN THE COUNTY OF SACRAMENTO, STATE OF CALIFORNIA, DESCRIBED
   AS: THE NORTH 1/2 OF LOT 20 OF J.H. KERR'S ADDITION TO ELK GROVE, ACCORDING TO
   THE OFFICIAL PLAT THEREOF, FILED IN THE OFFICE OF THE RECORDER OF SACRAMENTO
   COUNTY, CALIFORNIA, IN BOOK 1 OF MAPS, MAP NO. 28. APN:125-0253-017-0000.
   The property is located in ...........Sacramento........... at .9090 Locust Street........
                                              (County)
   ................................ , .......Elk Grove......... , California ....95624.....
        (Address)                                        (City)                              (ZIP Code)
   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian
   rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may
   now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall
   not exceed $ 51,000.00   . This limitation of amount does not include interest and other fees and charges validly
   made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this
   Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A.  Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt
       described below and all their extensions, renewals, modifications or substitutions. (Include items such as borrowers'
       names, note or contract amounts, interest rates (whether variable), maturity dates, etc.)
       One certain home equity line of credit agreement dated October 2, 2006
       executed by Gil H. Raposo and Joanne C. Raposo in the amount of $51,000.00
       due and payable in full on November 15, 2026.

CALIFORNIA - HOME EQUITY LINE OF CREDIT DEED OF TRUST (NOT FOR FNMA, FHLMC, FHA OR VA USE)                    (page 1 of 6)
ExpresS© © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA   3/10/2004
VMP-C465(CA) (0403)01                                    VMP Mortgage Solutions, Inc. (800)321-7291

013

Loan No:

**B.** All future advances from Lender to Trustor or other future obligations of Trustor to Lender under any promissory note, contract or guaranty, or other evidence of debt executed by Trustor in favor of Lender after this Security Instrument if this Security Instrument is specifically referenced on the evidence of other debt. If more than one person signs this Security Instrument, each Trustor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Trustor, or any one or more Trustor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument.

**C.** All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**D.** Performance of every obligation in this Security Instrument (including any subsequent instrument amending this Security Instrument) and any instrument now or later evidencing or securing any indebtedness secured by this Security Instrument.

In the event that Lender fails to provide any necessary notice of the right of rescission with respect to any additional indebtedness secured under paragraph B of this Section, Lender waives any subsequent security interest in the Trustor's principal dwelling that is created by this Security Instrument (but does not waive the security interest for the debts referenced in paragraph A of this Section).

**5. DEED OF TRUST COVENANTS.** Trustor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Trustor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and reduce the credit limit. By not exercising either remedy on Trustor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Trustor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Trustor agrees to make all payments when due and to perform or comply with all covenants. Trustor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

**Claims Against Title.** Trustor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Trustor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Trustor's payment. Trustor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Trustor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Trustor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Trustor will keep the Property in good condition and make all repairs that are reasonably necessary. Trustor shall not commit or allow any waste, impairment, or deterioration of the Property. Trustor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Trustor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Trustor will notify Lender of all demands, proceedings, claims, and actions against Trustor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Trustor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Trustor will in no way rely on Lender's inspection.

**Authority to Perform.** If Trustor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Trustor appoints Lender as attorney in fact to sign Trustor's name or pay any amount necessary for performance. Lender's right to perform for Trustor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

**Leaseholds; Condominiums; Planned Unit Developments.** Trustor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Trustor will perform all of Trustor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**Condemnation.** Trustor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Trustor authorizes Lender to intervene in Trustor's name in any of the above described actions or claims. Trustor assigns to Lender the

Exper<sup>e</sup>® © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA  3/19/2004  
-C485(CA) (0403)01



Loan No: ̄ ̄ ̄ ̄ ̄

proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**Insurance.** Trustor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Trustor subject to Lender's approval, which shall not be unreasonably withheld. If Trustor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Trustor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Trustor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Trustor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Trustor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Trustor. If the Property is acquired by Lender, Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**Financial Reports and Additional Documents.** Trustor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Trustor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Trustor's obligations under this Security Instrument and Lender's lien status on the Property.

6. **WARRANTY OF TITLE.** Trustor warrants that Trustor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Trustor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

8. **DEFAULT.** Trustor will be in default if any of the following occur:

**Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

**Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

**Property.** Any action or inaction by the Borrower or Trustor occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Trustor fails to maintain required insurance on the Property; (b) Trustor transfers the Property; (c) Trustor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Trustor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Trustor dies; (f) if more than one Trustor, any Trustor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Trustor and subjects Trustor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

**Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and such Borrower becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

9. **REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Trustor is in default. In some instances, federal and state law will require Lender to provide Trustor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.

At the option of the Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. Lender shall be entitled to, without limitation, the power to sell the Property.

Express® © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REOT-CA 3/10/2004
C-685(CA) (0403).01

(page 3 of 8)

SACRAMENTO,CA
Document: TD 20061005.967

Printed on 8/7/2015 5:24:30 AM

015

Case 15-02095    Filed 09/17/15    Doc 36

Loan 1

If Lender elects to foreclose by exercise of the power of sale, Lender will declare the entire Secured Debts due and payable by delivering to Trustee this Security Instrument and any evidence of the Secured Debts, receipts and evidence of expenditures made and secured, as Trustee requires. When the legally prescribed time passes after Trustor or Lender duly records a notice of default, the Trustee, Lender or other person authorized to take the sale will give a notice of sale as required by law and will cause the Property to be sold at the time and place fixed in the notice of sale. Lender may rescind any notice of default at any time before the Property's sale. Rescission will occur when Lender executes and records a notice of rescission that cancels any prior notice of default and any related acceleration of the Secured Debts. Lender's rescission will not waive any default then existing or subsequently occurring or preclude Lender exercising its remedies, including the power of sale, at another time.

The Property can be sold as a whole or in separate parcels and in any order that Trustee decides. The Property will be sold to the highest bidder for cash in lawful money of the United States, payable at sale time. The Property can be sold to anyone, including Trustor, Trustee or Lender. Trustee may postpone the sale of any part of the Property by public announcement at the time and place of this sale and afterwards at the time fixed by the preceding postponement. Upon any sale of the Property, Trustee will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Trustee will covenant that Trustee has not caused or allowed a lien or an encumbrance to burden the Property and that Trustee will specially warrant and defend the Property's title to the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Trustee. The deed's recital of facts will be conclusive proof of the truthfulness of these facts.

The proceeds from the Property's sale will be applied to the sale expenses, Trustee's expenses, Lender's attorneys' fees due on Trustor's default, sums that Trustee or Lender paid for procuring a title search of the Property's title subsequent to the execution of this Security Instrument, all outstanding amounts due under this Security Instrument and the remainder to anyone legally entitled to the remaining amounts due.

The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Trustor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

10. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Trustor breaches any covenant in this Security Instrument, Trustor agrees to pay all expenses Lender incurs in performing such covenants (including but not limited to advances and expenses described in the DEED OF TRUST COVENANTS section) or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Lender's security interest. These expenses are payable on demand and will bear interest from the date of payment until paid in full at the highest rate of interest in effect as provided in the terms of the Secured Debt. Trustor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Trustor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Trustor agrees to pay for any recordation costs of such release.

11. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Trustor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Trustor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

ExperTS © 1994 Bankers Systems, Inc., St. Cloud, MN Form GCP-REOT-CA 3/10/2004
VMP C-465(CA) (0402)01                                                (page 5 of 6)

016

Branch :F7I,User :TZ05                    Comment:                    Station Id :BDLH

Loan No.

C. Trustor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Trustor shall take all necessary remedial action in accordance with any Environmental Law.

D. Trustor shall immediately notify Lender in writing as soon as Trustor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

12. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Trustor will not be required to pay to Lender funds for taxes and insurance in escrow.

13. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Trustor signs this Security Instrument but does not sign an evidence of debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Trustor and Lender.

14. **SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

15. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

16. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one trustor will be deemed to be notice to all trustors. Lender and Trustor request that copies of any notice of default or notice of sale under a superior security instrument be sent to Lender and Trustor at the addresses listed in the DATE AND PARTIES section.

17. **WAIVERS.** Except to the extent prohibited by law, Trustor waives all appraisement or marshalling of assets relating to the Property.

18. **SPOUSE'S SEPARATE PROPERTY.** Any Trustor who is a married person expressly agrees that recourse may be had against his or her separate property.

19. **LINE OF CREDIT.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

20. **APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

21. **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]

☐ Assignment of Leases and Rents  ☐ Other ........................................................

22. ☐ **ADDITIONAL TERMS.**

Express © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/10/2004
C-465(CA) (0405)01                                                         (page 6 of 6)



Loan Nc

**23. REQUEST FOR NOTICE.** In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded
........................ N/A ........................ , in book ........ N/A ........ page ........ N/A ........ , records of ........................ N/A ........................ County, (or filed for record with recorder's serial number ........ N/A ........ , ........................ N/A ........................ County) California, executed by ........ N/A ........
........................ N/A ........................ as trustor (or mortgagor) in which
........................ N/A ........................ is named as beneficiary (or mortgagee) and
Name ........ N/A ........                                                as trustee be mailed to:
Address ........ N/A ........                                                                              at
**NOTICE:** A copy of any notice of default and of any notice     Signature on behalf of the requester named above:
of sale will be sent only to the address contained in this
recorded request. If your address changes, a new request
must be recorded.                                                              Signature ........ N/A ........
(Include the requestor's name, by the signer, among those acknowledging below, or use a separate acknowledgment form.)

**SIGNATURES:** By signing below, Trustor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Trustor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

_(Signature) Gil R. Raposo_                10/2/06          _(Signature) Joanne C. Raposo_          10/2/06
(Signature) Gil R. Raposo               (Date)          (Signature) Joanne C. Raposo          (Date)

**ACKNOWLEDGMENT:**
STATE OF _California_ ........ , COUNTY OF _Sacramento_ ........ ) ss.
On this _2nd_ ........ day of _October, 2006_ ........ before me _BJ Braswell_ ........
a notary public, personally appeared _Gil M. Raposo, Joanne C. Raposo_ ........

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/(are) subscribed to the within instrument and acknowledged to me that he/she/(they) executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature _BJ Braswell_ ........
Name (typed or printed) _BJ Braswell_ ........
My commission expires: _July 30, 2009_ ........

*BJ BRASWELL*
*Commission # 1598286*
*Notary Public - California*
*Sacramento County*
*My Comm. Expires Jul 30, 2009*

(Seal)

| REQUEST FOR FULL RECONVEYANCE |
| --- |
| **To Trustee:** The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of ........................ County, State of California, in book ........................ page ........ , of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto. Dated: ........................ |

Assessor's Identification Number    125-0253-017-0000

ExpertF © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/19/2004                                      *(page 6 of 6)*
OCP-C465(CA) (04/03)/01

**IndyMac Mortgage Services,**
a division of OneWest Bank®, FSB
6900 Beatrice Drive • Kalamazoo, MI 49009

*Ocwen Loan Services, LLC*
HELPING HOME OWNERS IS WHAT WE DO!
WWW.OCWENCUSTOMERS.COM



OCWEN

## NOTICE OF SERVICING TRANSFER TO OCWEN LOAN SERVICING, LLC



OCWEN LOAN #:
PRIOR LOAN #:
PROPERTY ADDRESS:    9090 LOCUST ST
ELK GROVE CA 95624

0001489 02 AB 0.381 **AUTO  T2 0 1925 95824-201899  -C01-P00000-I2

GIL RAPOSO
JOANNE RAPOSO
9090 LOCUST ST
ELK GROVE CA 95624-2016

11/15/2013

Dear Customer(s):

Effective 12/01/2013, IndyMac Mortgage Services, a division of OneWest Bank, FSB (IndyMac) will transfer the servicing of your Home Equity Line of Credit (HELOC) to Ocwen Loan Servicing, LLC (Ocwen).  The transfer of the servicing of your HELOC does not affect any term or condition of your HELOC agreement, other than terms directly related to the servicing of your loan.  Your account number will change, and the new account number is noted above.  Key information regarding the servicing of your account is provided below.

If your Loan is a HELOC that is currently active for draws:

- Please discontinue using any remaining Home Equity Line of Credit checks you have from IndyMac. You will receive a new checkbook with your new checking account number from Ocwen.

- IndyMac will "return to maker" any checks drawn on your account after 12/01/2013. These will be unpaid even if you have sufficient available funds in your account.

- If you need to access the available funds in your Home Equity Line of Credit while you are waiting for your new checkbook, please call the Ocwen Customer Care Center at (800) 746-2936 for information regarding how to access your funds.

- You will no longer be able to access your line using the credit card as Ocwen does not offer this feature.

Should you have questions relating to the transfer of servicing or need information regarding your account prior to 12/01/2013, please contact IndyMac's Customer Care Department at (800) 781-7399.

New Servicer Contact Information:
As of 12/01/2013, Ocwen's Customer Care Center will assist you with questions regarding the transfer of servicing or any other questions relating to your account. You may reach Ocwen's Customer Care Center at (800) 746-2936 Monday through Friday between 8:00 am ET to 9:00 pm ET, Saturday 8:00 am ET to 5:00 pm ET or Sunday 9:00 am ET till 9:00 pm ET.  Information concerning Ocwen and your mortgage loan may also be found online at www.ocwencustomers.com.  You can also obtain information using Ocwen's Automated Telephone system or by speaking with a Customer Care Center Representative. Please be sure to have your account number available when you call.

As of 12/01/2013, all written inquiries should be sent to Ocwen at the following address.  Please be sure to indicate your account number on all correspondence to ensure prompt response to your inquiry.

Ocwen Loan Servicing, LLC
Attn: Customer Service Department
P.O. Box 24738
West Palm Beach, FL 33416-4738

Making Payments:
The date that IndyMac will stop accepting a payment from you is 11/30/2013.  The date that Ocwen will start accepting payments from you is 12/01/2013.  Please make all checks payable to Ocwen and send all payments due on or after 12/01/2013 to the following address on the reverse side.  If you use a Bill Pay Service, you will also need to inform them of this new payment address.

For Western Union Quick Collect users, you can find the location nearest to you by calling (800) 238-5772 or visiting www.westernunion.com and clicking on "Find a Location".  At the location, please pay to name "OCWEN" and provide the loan number.

ACH (Automated Payments) or One-time Web Payments
Automatic monthly payments or one-time web payments can be setup and managed from our website at www.ocwencustomers.com.

---

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

# EXHIBIT 3

019

**IndyMac Mortgage Services,**
a division of OneWest Bank®, FSB
6900 Beatrice Drive • Kalamazoo, MI 49009

*Ocwen Loan Services, LLC*
HELPING HOME OWNERS IS WHAT WE DO!
WWW.OCWENCUSTOMERS.COM



O C W E N

## NOTICE OF SERVICING TRANSFER

**Western Union Quick Collect**
Code City: OCWEN
State: FLORIDA
Reference: OCWEN LOAN NUMBER:
7190561287
Agent Locator: (800) 325-6000

**MoneyGram®**
Receiver Code: 2355
Payable To: OCWEN LOAN SERVICING,
LLC
City: ORLANDO
State: FLORIDA
Reference: OCWEN LOAN NUMBER:
7190561287
Agent Locator: (800) 926-9400

**Check Payment Via Regular Mail**
Address:
Ocwen Loan Servicing, LLC
P.O. Box 6440
Carol Stream, IL 60197-6440

Please be sure to always include your
Ocwen loan number with your payment.

If you are currently enrolled in IndyMac's automated payment program (ACH) and your monthly payments are automatically withdrawn from your bank account, the service WILL NOT automatically continue with Ocwen. After November 4th, Ocwen automatic payments can be setup by visiting www.OcwenCustomers.com or by contacting Customer Service at 1-800-746-2936. We have included a temporary payment coupon at the end of this letter.

Ocwen NMLS #1852
OneWest/IndyMac NMLS#541760

Taxes and Insurance:
If you are currently responsible for payment of your real estate taxes and/or homeowners insurance, you will continue to be responsible for payment of these items after your account transfers to Ocwen. To ensure our records accurately reflect your insurance carrier and taxing authority, you may receive a letter of verification from Ocwen shortly after the transfer. Additionally, it is important to contact your insurance agency to ensure that (i) Ocwen receives proof of hazard insurance (with flood and/or windstorm coverage, as applicable) on your property and (ii) Ocwen is named as the beneficiary in the Mortgage Clause of your policy. If your mortgage payment includes escrow for taxes or insurance, please take the necessary steps to have all future bills forwarded to:

**INSURANCE**
Ocwen Loan Servicing, LLC
ISAOA
P.O. Box 6723
Springfield, OH 45501-6723
E-mail: updateinsurance@ocwen.com
Insurance Center: (866)825-9265
Insurance Center Fax: (888)882-1816

**PROPERTY TAXES**
Ocwen Loan Servicing, LLC
Attn: Tax Department
P.O. Box 24665
West Palm Beach, FL 33416-4665
Customer Care Center: (800)746-2936

Year-end Interest Statement (IRS Form 1098):
By January 31 of each year, you will be mailed an Annual Tax and Interest Statement from each company that has serviced your loan the prior year. Each statement will contain IRS reporting information for the time your loan was serviced by each servicer.

Optional Insurance:
The transfer of servicing rights may affect the terms of, or the continued availability of mortgage life, disability insurance, or any other type of optional insurance. Not everyone has this type of insurance, but if you do, please be advised that it may not transfer to Ocwen Loan Servicing, LLC. Unless you are notified in writing by Ocwen, your insurance will transfer with your loan.

Except in limited circumstances, the law requires that your present Servicer send you this notice at least fifteen (15) days before the effective date of transfer. Your new Servicer must also send you this notice no later than fifteen (15) days after this effective date. In this case, all necessary information is combined in this one notice.

---

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

**IndyMac Mortgage Services,**
a division of OneWest Bank®, FSB
6900 Beatrice Drive • Kalamazoo, MI 49009

*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!
WWW.OCWENCUSTOMERS.COM



OCWEN



## NOTICE OF SERVICING TRANSFER

The following notice applies if your HELOC was modified under the HAMP 2MP program and converted from an open-end HELOC to a closed end loan with amortizing monthly payments:

*Except in limited circumstances, the law requires that your present Servicer send you this notice at least fifteen (15) days before the effective date of transfer. Your new Servicer must also send you this notice no later than fifteen (15) days after this effective date. In this case, all necessary information is combined in this one notice.*

*You should be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 USC 2605):*

*During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old Servicer before its due date may not be treated by the new loan Servicer as late, and a late fee may not be imposed on you.*

*Section 6 of RESPA (12 USC 2605) gives your certain consumer rights. If you should need to send a "qualified written request" to your loan Servicer concerning the servicing of your loan, your Servicer must provide you with a written acknowledgement within twenty (20) business days of receipt of your request. A "qualified written request" is defined as a written correspondence, other than notice in a payment coupon or other payment medium supplied by the Servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to:*

*If to OneWest/IndyMac.:*
*IndyMac Mortgage Services*
*Attn: Correspondence Research*
*P.O. Box 4045*
*Kalamazoo, MI 49003-4045*

*If to Ocwen:*
*Ocwen Loan Servicing, LLC*
*Attn: Research Department*
*P.O. Box 24736*
*West Palm Beach, FL 33416-4736*

*Not later than sixty (60) business days after receiving your request, your Servicer must make appropriate corrections to your account and provide you with a written clarification regarding any dispute, or in some circumstances, a notice of a fifteen (15) business day extension. During this period, your Servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the Servicer from initiating foreclosure if proper grounds exist under the mortgage documents. A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.*

*Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where Servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.*

Please retain this information with your financing agreement documentation. We look forward to working with you and providing you with the highest quality customer care service.

**Ocwen Loan Servicing, LLC is a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.**

**IndyMac is a debt collector attempting to collect a debt and any information obtained will be used for that purpose. If you are not obligated on the debt or if the debt has been discharged in a bankruptcy proceeding, this is for informational purposes only and is not an attempt to assess or collect the debt from you personally.**

---

*Please Detach below and include with your monthly payment.*

---

OCWEN

Note: If your loan is current, any
excess funds will first be applied to
outstanding amounts due and then
additional principal.

**Payment Coupon**

GIL RAPOSO

Account Number:

☐ Check box if your contact
information has changed,
update on the back

| | |
|---|---|
| AMOUNT DUE | $ |
| Additional Principal: | $ |
| Additional Escrow: | $ |
| Other: (Please Specify) | $ |
| Total Enclosed: | $ |

OCWEN
PO BOX 6440
CAROL STREAM IL 60197-6440

021



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!
WWW.OCWENCUSTOMERS.COM

O C W E N

At Ocwen Loan Servicing, we understand the importance of homeownership. We're dedicated to providing you with assistance and information you need about your mortgage loan, as well as additional products you may need as a homeowner. To get started, visit OcwenCustomers.com, select "New Customers" and sign up as a new user with your new Ocwen loan number.

**It's easy to manage your account online anytime at OcwenCustomers.com.
Once registered, you will be able to:**

View details of your mortgage account
Update or remove Registered Users
Update your address, email, and phone number
Review your monthly statement detail and history
Confirm receipt of your last payment
Examine your year-end statement
Check your escrow summary
Check your year-to-date interest and taxes paid
Select communication preferences to meet your needs
Explore homeowner programs available to you such as the Equity Accelerator® program
Communicate via a secure messaging center

*On the proceeding two pages you may find answers to common questions. These are a sample exerted from the Frequently Asked Questions pages online at ocwencustomers.com.*

## General Account & Loan Payment

**What changes can I expect after the transfer of my Home Equity Loan to Ocwen is complete?**
Most of the services available by IndyMac Mortgage Services (Prior Servicer) will still be provided by Ocwen. Rest assured. We have taken the proper measures to ensure that this transition is as seamless to you as possible and that your questions and requests will be taken with the utmost urgency by our dedicated team of Home Equity Loan representatives, who are only a phone call away. Please note there are certain services from IndyMac that Ocwen will not provide as part of this transfer of service. Our Home Equity Loan representatives are prepared to process any outgoing wire transfer requests and ACH payments toward your Home Equity Loan in an accurate and timely manner. As such, Ocwen will not support automated requests with the use of a personal identification number (PIN). Ocwen has also designed a comprehensive statement comprised of all the information pertinent to your Home Equity Loan. Ocwen will not support the process of a separate personalized statement in any manner other than the statement described before. At Ocwen we believe that with our dedicated Home Equity Loan representatives, along with our comprehensive statement design, we have added value to your new relationship.

**What if I made a payment to my Prior Servicer, but it has not posted yet?**
Your Prior Servicer will forward your payment to us within 15 business days. It may take a few days for us to receive and apply the payments, but this will not negatively impact your account or your credit report. To check on the status of your account, you may go to ocwencustomers.com.

**How can I get information about my account?**
You can access Ocwen's website and/or automated telephone system which will provide you with information regarding your account 24 hours a day. These systems have been designed to provide you with the most frequently requested services or information. This includes, but is not limited to, options to obtain payment histories, a payoff or reinstatement quote, status of your credit reporting, payment options, status of tax and insurance payments, financial hardship options and frequently asked questions (FAQ). Website: www.ocwencustomers.com. Telephone Number: (800) 746-2936.

022



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!
WWW.OCWENCUSTOMERS.COM

O C W E N



**If my account is past due and I have not made a payment arrangement with my Prior Servicer, how can I make payment arrangements or get assistance due to financial difficulties?**
We offer a number of specialized programs designed to assist borrowers who are past due. Please go to www.ocwencustomers.com, click on "Mortgage Customers" and then log in with your User ID and Password. If you need to create a User ID and Password, select the "New Customers icon". Once you log in, select the "Financial Difficulties" icon. This will allow you to download an application package.

**If my loan is currently frozen, will this transfer of servicing mean my funds are now available?**
No, lines currently unavailable for draws will remain frozen. You will not receive a new checkbook at this time.

**If my account is current, where do I send my payments?**

| Payment Processing Address | For Overnight Express Payments |
|---|---|
| Ocwen Loan Servicing, LLC | Ocwen Loan Servicing Attn: Cashiering |
| PO Box 6440 | 1661 Worthington Road, Suite 100 |
| Carol Stream, IL 60197-6440 | West Palm Beach, FL 33409 |

**Are there any special requirements for hazard insurance?**
It is important to contact your insurance agency to ensure that (i) Ocwen receives proof of hazard insurance on your property (with flood and/or windstorm coverage, as applicable) and (ii) Ocwen is named as the beneficiary in the Mortgagee Clause of your policy. If your mortgage payment includes escrow for taxes or insurance, please take the necessary steps to have all future bills forwarded to:

| **INSURANCE** | **PROPERTY TAXES** |
|---|---|
| Ocwen Loan Servicing, LLC | Ocwen Loan Servicing, LLC |
| ISAOA | Attn: Tax Department |
| P. O. Box 6723 | P.O. Box 24665 |
| Springfield, OH 45501-6723 | West Palm Beach, FL 33416-4665 |
| Phone: (866) 825-9265 | Phone: (800)746-2936 |
| updateinsuranceinfo@ocwencustomers.com | |

### Mortgage Modification

**I am currently on a trial modification plan and still have payments remaining before it becomes a final/permanent modification. What do I do?**
You should continue making your monthly payments as required in the modification plan. Your Prior Servicer will be providing Ocwen the status of your modification. Please allow 30 days to review and process your information. It is not necessary to call for a status prior to 30 days, as the agent will not have any additional information to provide you.

**How do I contact my relationship manager?**
To contact your relationship manager contact our Customer Care Center at (800) 746-2936 and request an appointment with your Relationship Manager.

**I just submitted my modification application to the Prior Servicer. Should I send this to Ocwen again?**
Your Prior Servicer will provide Ocwen with the status of your modification application and copies of your documentation. It is not necessary to re-send the documents to Ocwen at this time. Please allow up to 30 days from the date of the account transfer for Ocwen to process your application documentation and determine your eligibility. It is not necessary to call prior to 30 days as the agent will not have any additional information to provide to you.

**I received a notice from my Prior Servicer that I was denied for the Making Home Affordable Program. I am still having financial difficulty; what can I do?**
We may still be able to help you. We offer a number of specialized programs designed to assist borrowers who are past due. Please go to www.ocwencustomers.com for more information and to download an application for assistance.

**I received a notice from my Prior Servicer that they were missing documents for my modification but I have not sent them yet; do I send these documents to Ocwen now?**
Yes, please send the documents to Ocwen via e-mail at mod@ocwencustomers.com or fax the documents to (407) 737-6174. Your Prior Servicer will be providing Ocwen with the status of your modification (trial plan or initial application), copies of your initial application and information identifying the missing documentation. Please allow up to 30 days from the date you send the documentation for Ocwen to process your documentation.

### IMPORTANT INFORMATION ABOUT THIS TRANSFER

You should also be aware of the following information which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. Section 2605). During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old Servicer before its due date may not be treated by the new loan Servicer as late, and a late fee may not be imposed on you.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

023



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!
WWW.OCWENCUSTOMERS.COM

OCWEN

## IMPORTANT INFROMATION ABOUT THIS TRANSFER (CONTINUED)

Section 6 of RESPA also gives you certain consumer rights. If you send a "qualified written request" to Ocwen Loan Servicing (Attention Customer Service Department, P.O. Box 24738 West Palm Beach, FL 33416) concerning the servicing of your loan, Ocwen must provide you with a written acknowledgement within 20 business days of receipt of your request. A "qualified written request" is defined as a written correspondence, other than notice on a payment coupon or other payment medium supplied by the Servicer, which includes your name and account number and your reasons for the request. A "business day" is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Not later than 60 business days after receiving your request, Ocwen must make the appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-business-day period, Ocwen may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent Ocwen from initiating foreclosure if proper grounds exist under the mortgage documents.

Section 6 of RESPA also provides for damages and costs for individuals in circumstances where servicers are shown to have violated this section. You should seek legal advice if you believe your rights have been violated.

Disclaimer Regarding Mandatory Arbitration Provisions: If your account documents require you to submit disputes regarding your account to arbitration for resolution, such requirement is waived and will not be enforced against you. Such waiver, however, does not affect any rights you may have to require arbitration of disputes regarding your account.

Credit Reporting: You are hereby notified that we may report information about your account to credit reporting agencies. Late payments, missed payments, or other defaults on your account may also be reflected on your credit report.

Identity Theft Notice: If you would like to obtain information regarding identity theft, you may contact the Federal Trade Commission at www.ftc.gov/bcp/edu/microsites/idtheft/ OR by calling 1-877-ID-THEFT (1-877-438-4338).

Properties in California: The state Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 am or after 9 pm. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason that you may not receive personals calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may not contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at (877) FTC-HELP or www.ftc.gov.

Properties in Colorado: For information about the Colorado Fair Debt Collection Practices Act, see www.ago.state.co.us/cab.htm. A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.
Properties in Hawaii: Ocwen Loan Servicing, LLC is licensed by the Commissioner of Financial Institutions in Hawaii. Complaints and inquiries about the servicer may be submitted to the Commissioner.

Properties in Maryland: The Maryland Consumer Protection Act require us to disclose that if Ocwen fails to give written notice of this transfer or fails to make timely payments of taxes or insurance premiums (assuming the borrower has paid an amount to cover these costs) and Ocwen has received the tax bill or notice, Ocwen may face liability for any economic damages incurred by the borrower.

Properties in Minnesota: Borrowers on loans secured by property in Minnesota can direct complaints and inquiries and questions to the Ocwen Loan Servicing, LLC Customer Care Department at 1-800-746-2936 between 8:00 a.m. and 9:00 p.m. ET, Monday through Friday, from 8:00 a.m. to 5:00 p.m. ET on Saturday, or from 9:00 a.m. to 9:00 p.m. ET on Sunday or in writing to: P.O. Box 24738, West Palm Beach, FL 33416-4738. Each written complaint or question will be responded to within 15 days.

Properties in New York: Ocwen Loan Servicing, LLC is registered with the Superintendent of the New York State Banking Department. The borrower may file complaints and inquiries about Ocwen Loan Servicing, LLC with or obtain further information from the New York State Banking Department by calling the Department's Consumer Help Unit at 1-877-BANK-NYS or by visiting the Department's website at www.banking.state.ny.us.

Properties in North Carolina: Ocwen Loan Servicing, LLC is licensed by the North Carolina Commissioner of Banks (North Carolina Permit No. 3946) and complaints and inquiries about Ocwen Loan Servicing, LLC may be submitted to the Commissioner.

Properties in Texas: The State of Texas requires us to inform you that a registrant shall provide to the borrower of each residential mortgage loan the following notice not later than the 30th day after the registrant commences servicing the loan: Complaints and inquiries regarding the servicing of your mortgage should be sent to the Department of Savings and Mortgage Lending, 2601 N. Lamar, Suite 201, Austin, Texas 78705. Complaint Forms and Instructions may be downloaded and printed from the Departments website located at http://www.sml.state.tx.us or obtained from the Department upon request by mail at the address above, by telephone at its Toll-free Consumer Hotline at (877) 276-5550, by fax at (512) 475-1360, or by email at SML.info@SML.STATE.TX.US.

Attention Servicemembers and Dependents: The federal Service members Civil Relief Act and certain state laws provide important protection for you, including exceptions to foreclosure during military service and a period thereafter as provided by federal law.

---

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

024

**Nichole L. Glowin**

| | |
|---|---|
| **To:** | T. Robert Finlay; Robin Wright |
| **Cc:** | IIP; Dominic, Gilbertbalaraj |
| **Subject:** | - Gil Raposo - |
| **Attachments:** | Notification - Default Motion/Judgment |

Counsel,

_     ⌐ active matter in CL for which you are managing counsel hence please review and handle as you deem appropriate.

*Thank You,*
*Hema Dhapola*
*Litigation Analyst*
*Law Dept,*
*Ocwen Financial Solutions*

EXHIBIT 4

025

Recording Requested By:
OCWEN LOAN SERVICING, LLC

When Recorded Return To:
Current Trustor:
GIL RAPOSO
9090 LOCUST STREET
ELK GROVE, CA  95624

---

‖█▌█▌█▌█▌█▌█‖

**FULL RECONVEYANCE**

OCWEN LOAN SERVICING, L.L.C. :          7 "RAPOSO" Lender ID:10324/1/12/15  Sacramento, California PIF:
Prepared By:  Debbie Wilson,  OCWEN LOAN SERVICING, LLC 3451 HAMMOND AVENUE, PO BOX 780, WATERLOO, IA
50704-0780 1-800-766-4622

T.D. SERVICE COMPANY as present Trustee for the Deed of Trust executed by GIL H. RAPOSO AND JOANNE C.
RAPOSO as Trustor(s), Dated:  10/02/2006 Recorded:  10/05/2006  in Book/Reel/Liber: N/A Page/Folio: 0967 as
Instrument No.: 20061005 of official Records in the office of the County Recorder of  Sacramento, California having
been requested in writing, by the holder of the obligations secured by said Deed of Trust, to reconvey the estate
granted to trustee under said Deed of Trust, does hereby reconvey to the person or persons legally entitled thereto,
without warranty, all the estate, title and interest acquired by Trustee under said Deed of Trust.

IN WITNESS WHEREOF, T.D. SERVICE COMPANY as the Trustee has caused its corporate name to be affixed by
a duly authorized officer on the date shown in the acknowledgment certificate below:

On  SEP 0 2 2015
By: T.D. SERVICE COMPANY as Trustee

CRISTINA HUITRON , Assistant Secretary

STATE OF Idaho
COUNTY OF Bonneville

On  SEP 0 2 2015 , before me, TRACY JOLLEY, a Notary Public in and for Bonneville in the State of Idaho,
personally appeared CRISTINA HUITRON , Assistant Secretary, personally known to me (or proved to me on the
basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal,

TRACY JOLLEY
NOTARY PUBLIC
STATE OF IDAHO

TRACY JOLLEY
Notary Expires: 08/19/2020 #64252

(This area for notarial seal)

EXHIBIT 5

026



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do! ™*

1661 Worthington Road, Ste.100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

9/1/2015

Loan Number:

Gil Raposo
Joanne Raposo
9090 Locust St
Elk Grove, CA 95624

**Property Address:**
9090 Locust St
Elk Grove, CA  95624

Dear Customer(s),

This letter is to advise you that, as of 8/31/2015, Ocwen Loan Servicing, LLC has decided to release the lien on the property located at 9090 Locust St, Elk Grove, CA 95624, forgive the mortgage debt, cease collection activity on the loan and not proceed with foreclosure.  We will be reporting this fact to the credit reporting agencies, but we will thereafter cease any credit reporting on this account.   You have the right to occupy the property until a sale or other title transfer action occurs.

In addition, Ocwen Loan Servicing, LLC will not remit funds to pay for the real estate taxes, insurance premiums or any other expenses associated with your property.  It is your responsibility to pay those bills directly to the taxing authority or insurance provider and to ensure that all future billing statements for taxes or insurance are sent to you directly.

If there are any funds remaining in any escrow account, they will be refunded to you within 20 days of the date of this letter.

If you are currently involved in a bankruptcy proceeding or have been discharged of your personal liability for the repayment of this debt, please note that this notice is being provided to you for informational purposes only, it is not an attempt to hold you personally responsible for the debt and applies only to the lien on your property and not to you personally.

If you have any questions, please call us toll-free at (800) 746-2936. We are available Monday through Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm and Sunday 9:00 am to 9:00 pm ET.

Sincerely,

Loan Servicing

*Escrow Discontinued Notice_v2.1*

Notice Regarding Bankruptcy:  Please be advised that this letter is in no way an attempt to collect either a pre-petition, post-petition or discharged debt.  If your bankruptcy case is still active, no action will be taken in willful violation of the Automatic Stay.  If you have received an Order of Discharge in a bankruptcy case, any action taken by us is for the sole purpose of protecting our lien interest in the underlying mortgaged property and is not an attempt to recover any amounts from you personally.  Finally, if you are in an active Chapter 11, 12 or 13 bankruptcy case and an Order for Relief from the Automatic Stay has not been issued, you should continue to make payments in accordance with your plan. If your loan has been paid in full or already foreclosed upon, this is not an attempt to collect any additional funds from you.

EXHIBIT 6

027