WRIGHT, FINLAY & ZAK, LLP
Nichole L. Glowin, Esq. SBN 262932
4665 MacArthur Court, Suite 280
Newport Beach, CA 92660
Tel: (949) 477-5050; Fax: (949) 608-9142
nglowin@wrightlegal.net

Attorneys for Defendants, OCWEN LOAN SERVICING, LLC and ONEWEST BANK, FSB

## UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF CALIFORNIA- SACRAMENTO DIVISION

| | |
|---|---|
| In re: | Chapter: 13 |
| GIL MARIANO RAPOSO and JOANNE CAROL RAPOSO, | BK Case No.: 09-27153<br>Adv. Case No.: 15-02095 |
| Debtors. | **EXHIBITS 1-5 IN SUPPORT OF DECLARATION OF OCWEN LOAN SERVICING, LLC IN RESPONSE TO ORDER TO APPEAR REGARDING ATTORNEY REPRESENTATION** |
| GIL MARIANO RAPOSO and JOANNE CAROL RAPOSO, | |
| Plaintiffs, | |
| vs. | |
| OCWEN LOAN SERVICING, LLC and ONEWEST BANK, FSB, | Date:        November 19, 2015<br>Time:        1:30 p.m.<br>Courtroom:   33, Dept. E<br>Location:    501 I Street<br>             Sacramento, CA 95814 |
| Defendants. | |

| Exhibit # | Document | Page # |
|---|---|---|
| 1 | Docket for Bankruptcy Case 09-27153 | 3-4 |
| 2 | Deed of Trust | 5-11 |

---

**EXHIBITS IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY**

| Exhibit # | Document | Page # |
|---|---|---|
| 3 | Service Transfer Letter | 12-17 |
| 4 | Power of Attorney | 18-24 |
| 5 | Ocwen Referral E-mail | 25 |

**EXHIBITS IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY**

REOPENED, ADVPEND

# U.S. Bankruptcy Court
## Eastern District of California (Sacramento)
### Bankruptcy Petition #: 09-27153

|  |  |
|---|---|
| | *Date filed:* 04/16/2009 |
| *Assigned to:* Hon. Ronald H. Sargis | *Date reopened:* 05/14/2015 |
| Chapter 13 | *Debtor discharged:* 11/03/2014 |
| Voluntary | *Joint debtor discharged:* 11/03/2014 |
| Asset | *Plan confirmed:* 06/11/2009 |
| | *341 meeting:* 05/21/2009 |

*Debtor disposition:*  Standard Discharge
*Joint debtor disposition:* Standard Discharge

| | |
|---|---|
| **Debtor**<br>**Gil Mariano Raposo**<br>9090 Locust St<br>Elk Grove, CA 95624<br>SACRAMENTO-CA<br>SSN / ITIN: xxx-xx-8089 | represented by **Peter L. Cianchetta**<br>8788 Elk Grove Blvd. Ste. 2A<br>Elk Grove, CA 95624<br>916-685-7878<br><br>**Peter G. Macaluso**<br>7230 South Land Park Drive<br>#127<br>Sacramento, CA 95831<br>916-392-6591 |
| **Joint Debtor**<br>**Joanne Carol Raposo**<br>9090 Locust St<br>Elk Grove, CA 95624<br>SACRAMENTO-CA<br>SSN / ITIN: xxx-xx-9335 | represented by **Peter L. Cianchetta**<br>(See above for address)<br><br>**Peter G. Macaluso**<br>(See above for address) |
| **Trustee**<br>**Lawrence J. Loheit**<br>PO Box 1858<br>Sacramento, CA 95812-1858<br>916-856-8000<br>*TERMINATED: 08/01/2011* | |
| **Trustee**<br>**David Cusick**<br>PO Box 1858<br>Sacramento, CA 95812-1858<br>916-856-8000 | |

# EXHIBIT 1

003

**U.S. Trustee**
**Office of the U.S. Trustee**
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

**004**

Case 15-02095     Filed 10/16/15     Doc 57

PLEASE COMPLETE THIS INFORMATION

RECORDING REQUESTED BY:

     INDY MAC BANK, FSB

AND WHEN RECORDED MAIL TO:

     RETURN TO (NLS)
NATIONS TITLE AGENCY INC.
5370 W. 95th ST
SHAWNEE, KS 66207



Sacramento County Recording
Craig A Kramer, Clerk/Recorder
BOOK **20061005** PAGE **0967**
Check Number 2864
Thursday, OCT 05, 2006 12:25:26 PM
Ttl Pd    $48.00      Nbr-0004542435

MLB/11/1-7

SPACE ABOVE FOR RECORDER'S USE ONLY

Deed of Trust 06UC29502
Title of Document

# THIS AREA FOR RECORDER'S USE ONLY

THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

(Rev. 6/00:ha)                                             (Word/S:/Doc Exam/Cover Sheet)

EXHIBIT 2                                    005

Loan No:
This document was prepared by Flora Griffin
901 East 104th Street, Building B, Kansas City, MO 64131
Please return this document after recording to:
IndyMac Bank, F.S.B. c/o Document
Management
901 E. 104th Street Building B Suite
400/500
Kansas City, MO 64131

**RETURN TO (NLS)**
**NATIONS TITLE AGENCY INC.**
**5370 W. 95th ST**
**SHAWNEE, KS 66207**

———— State of California ————

**DEED OF TRUST**
(With Future Advance Clause)

Space Above This Line For Recording Data

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is ........ October 2, 2006 ........ and the parties, their addresses and tax identification numbers, if required, are as follows:
   TRUSTOR:      Gil H. Raposo and Joanne C. Raposo, husband and wife, as joint tenants

                 9090 Locust Street, Elk Grove, California 95624
      ☐ If checked, refer to the attached Addendum incorporated herein, for additional Trustors, their signatures and acknowledgments.
   TRUSTEE: Old Republic National Title Insurance Company
            5370 West 95th Street, Overland Park, KS 66207

   LENDER:  IndyMac Bank, F.S.B., a federally chartered savings bank

            155 North Lake Avenue, Pasadena, CA 91101

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Trustor's performance under this Security Instrument, Trustor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:
   THE REAL PROPERTY IN THE COUNTY OF SACRAMENTO, STATE OF CALIFORNIA, DESCRIBED AS: THE NORTH 1/2 OF LOT 20 OF J.H. KERR'S ADDITION TO ELK GROVE, ACCORDING TO THE OFFICIAL PLAT THEREOF, FILED IN THE OFFICE OF THE RECORDER OF SACRAMENTO COUNTY, CALIFORNIA, IN BOOK 1 OF MAPS, MAP NO. 28. APN:125-0253-017-0000.
   The property is located in .............. Sacramento .............. at .. 9090 Locust Street .......
                                                    (County)
   ....................................... , ..................... , California ... 95624 ......
           (Address)                                    (City)                                (ZIP Code)

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ 51,000.00 .......... This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A.  Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(Include items such as borrowers' names, note or contract amounts, interest rates (whether variable), maturity dates, etc.)*
   One certain home equity line of credit agreement dated October 2, 2006 executed by Gil H. Raposo and Joanne C. Raposo in the amount of $51,000.00 due and payable in full on November 15, 2026.

CALIFORNIA - HOME EQUITY LINE OF CREDIT DEED OF TRUST (NOT FOR FNMA, FHLMC, FHA OR VA USE)
ExSereff © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/10/2004

*(page 1 of 6)*

VMP-C465(CA) (0403).01                    VMP Mortgage Solutions, Inc. (800)521-7291

006

Case 15-02095    Filed 10/16/15    Doc 57

Loan No:

    B.  All future advances from Lender to Trustor or other future obligations of Trustor to Lender under any promissory note, contract or guaranty, or other evidence of debt executed by Trustor in favor of Lender after this Security Instrument if this Security Instrument is specifically referenced on the evidence of other debt. If more than one person signs this Security Instrument, each Trustor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Trustor, or any one or more Trustor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument.

    C.  All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

    D.  Performance of every obligation in this Security Instrument (including any subsequent instrument amending this Security Instrument) and any instrument now or later evidencing or securing any indebtedness secured by this Security Instrument.

In the event that Lender fails to provide any necessary notice of the right of rescission with respect to any additional indebtedness secured under paragraph B of this Section, Lender waives any subsequent security interest in the Trustor's principal dwelling that is created by this Security Instrument (but does not waive the security interest for the debts referenced in paragraph A of this Section).

**5.**   **DEED OF TRUST COVENANTS.** Trustor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Trustor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and reduce the credit limit. By not exercising either remedy on Trustor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

    **Payments.** Trustor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

    **Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Trustor agrees to make all payments when due and to perform or comply with all covenants. Trustor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

    **Claims Against Title.** Trustor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Trustor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Trustor's payment. Trustor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Trustor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Trustor may have against parties who supply labor or materials to maintain or improve the Property.

    **Property Condition, Alterations and Inspection.** Trustor will keep the Property in good condition and make all repairs that are reasonably necessary. Trustor shall not commit or allow any waste, impairment, or deterioration of the Property. Trustor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Trustor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Trustor will notify Lender of all demands, proceedings, claims, and actions against Trustor, and of any loss or damage to the Property.

    Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Trustor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Trustor will in no way rely on Lender's inspection.

    **Authority to Perform.** If Trustor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Trustor appoints Lender as attorney in fact to sign Trustor's name or pay any amount necessary for performance. Lender's right to perform for Trustor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

    **Leaseholds; Condominiums; Planned Unit Developments.** Trustor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Trustor will perform all of Trustor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

    **Condemnation.** Trustor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Trustor authorizes Lender to intervene in Trustor's name in any of the above described actions or claims. Trustor assigns to Lender the

ExperTel® © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/10/2004



(page 3 of 8)

VMP®-C465(CA) (0403).01

007

Loan No:

proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**Insurance.** Trustor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Trustor subject to Lender's approval, which shall not be unreasonably withheld. If Trustor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Trustor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Trustor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Trustor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Trustor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Trustor. If the Property is acquired by Lender, Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**Financial Reports and Additional Documents.** Trustor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Trustor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Trustor's obligations under this Security Instrument and Lender's lien status on the Property.

6. **WARRANTY OF TITLE.** Trustor warrants that Trustor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Trustor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

8. **DEFAULT.** Trustor will be in default if any of the following occur:

**Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

**Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

**Property.** Any action or inaction by the Borrower or Trustor occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Trustor fails to maintain required insurance on the Property; (b) Trustor transfers the Property; (c) Trustor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Trustor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Trustor dies; (f) if more than one Trustor, any Trustor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Trustor and subjects Trustor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

**Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and such Borrower becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

9. **REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Trustor is in default. In some instances, federal and state law will require Lender to provide Trustor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.

At the option of the Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. Lender shall be entitled to, without limitation, the power to sell the Property.

Express © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/10/2004
© -C465(CA) (0403).01           *(page 3 of 6)*





Case 15-02095    Filed 10/16/15   Doc 57

Loan 1

If Lender elects to foreclose by exercise of the power of sale, Lender will declare the entire Secured Debts due and payable by delivering to Trustee this Security Instrument and any evidence of the Secured Debts, receipts and evidence of expenditures made and secured, as Trustee requires. When the legally prescribed time passes after Trustee or Lender duly records a notice of default, the Trustee, Lender or other person authorized to take the sale will give a notice of sale as required by law and will cause the Property to be sold at the time and place fixed in the notice of sale. Lender may rescind any notice of default at any time before the Property's sale. Rescission will occur when Lender executes and records a notice of rescission that cancels any prior notice of default and any related acceleration of the Secured Debts. Lender's rescission will not waive any default then existing or subsequently occurring or preclude Lender exercising its remedies, including the power of sale, at another time.

The Property can be sold as a whole or in separate parcels and in any order that Trustee decides. The Property will be sold to the highest bidder for cash in lawful money of the United States, payable at sale time. The Property can be sold to anyone, including Trustee, Trustee or Lender. Trustee may postpone the sale of any part of the Property by public announcement at the time and place of this sale and afterwards at the time fixed by the preceding postponement. Upon any sale of the Property, Trustee will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Trustee will covenant that Trustee has not caused or allowed a lien or an encumbrance to burden the Property and that Trustee will specially warrant and defend the Property's title to the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Trustee. The deed's recital of facts will be conclusive proof of the truthfulness of these facts.

The proceeds from the Property's sale will be applied to the sale expenses, Trustee's expenses, Lender's attorneys' fees due on Trustor's default, sums that Trustee or Lender paid for procuring a title search of the Property's title subsequent to the execution of this Security Instrument, all outstanding amounts due under this Security Instrument and the remainder to anyone legally entitled to the remaining amounts due.

The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Trustor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

10. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Trustor breaches any covenant in this Security Instrument, Trustor agrees to pay all expenses Lender incurs in performing such covenants (including but not limited to advances and expenses described in the DEED OF TRUST COVENANTS section) or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Lender's security interest. These expenses are payable on demand and will bear interest from the date of payment until paid in full at the highest rate of interest in effect as provided in the terms of the Secured Debt. Trustor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited t,a, attorneys' fees, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Trustor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Trustor agrees to pay for any recordation costs of such release.

11. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Trustor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Trustor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

Exporary⊗ⓒ 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/10/2004        (page 4 of 6)
ꟽ C485(CA) (0403)01

Loan No.

    C. Trustor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Trustor shall take all necessary remedial action in accordance with any Environmental Law.

    D. Trustor shall immediately notify Lender in writing as soon as Trustor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**12. ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Trustor will not be required to pay to Lender funds for taxes and insurance in escrow.

**13. JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Trustor signs this Security Instrument but does not sign an evidence of debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Trustor and Lender.

**14. SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

**15. SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

**16. NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one trustor will be deemed to be notice to all trustors. Lender and Trustor request that copies of any notice of default or notice of sale under a superior security instrument be sent to Lender and Trustor at the addresses listed in the DATE AND PARTIES section.

**17. WAIVERS.** Except to the extent prohibited by law, Trustor waives all appraisement or marshalling of assets relating to the Property.

**18. SPOUSE'S SEPARATE PROPERTY.** Any Trustor who is a married person expressly agrees that recourse may be had against his or her separate property.

**19. LINE OF CREDIT.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

**20. APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

**21. RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]

    ☐ Assignment of Leases and Rents   ☐ Other ...................................................................

**22. ☐ ADDITIONAL TERMS.**

ExperEd © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/10/2004

VMP®-C465(CA) (0403).01



*(page 5 of 6)*

Loan No

**23. REQUEST FOR NOTICE.** In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded in book ............ N/A ............ , page ............ N/A ............ , records of ............ N/A ............ County, (or filed for record with recorder's serial number ............ N/A ............ , ............ N/A ............ County) California, executed by   **N/A**
........................................................................................................................................., as trustor (or mortgagor) in which
............ N/A ............ , is named as beneficiary (or mortgagee) and
............ N/A ............ , as trustee be mailed to:
Name ............ N/A ............                                                                                                at
Address ............ N/A ............
**NOTICE:** A copy of any notice of default and of any notice      Signature on behalf of the requester named above:
of sale will be sent only to the address contained in this
recorded request. If your address changes, a new request
must be recorded.                                                          Signature ............ N/A ............
(Include the requester's name, by the signer, among those acknowledging below, or use a separate acknowledgment form.)

**SIGNATURES:** By signing below, Trustor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Trustor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

(Signature) Gil H. Raposo                 10/2/06          (Signature) Joanne C. Raposo          10/2/06
        (Signature) Gil H. Raposo          (Date)                 (Signature) Joanne C. Raposo          (Date)

**ACKNOWLEDGMENT.**
        STATE OF   California ............ , COUNTY OF   Sacramento ............ } ss.
On this   2nd   day of   October, 2006   before me  BJ Braswell
a notary public, personally appeared   Gil M. Raposo , Joanne C Raposo

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature   BJ Braswell
Name (typed or printed)   BJ Braswell
My commission expires:   July 30, 2009

BJ BRASWELL
Commission # 1598285
Notary Public - California
Sacramento County
My Comm. Expires Jul 30, 2009

                        (Seal)

| REQUEST FOR FULL RECONVEYANCE |
|---|
| To Trustee: The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of ............ County, State of California, in book ............ page ............ of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto. Dated: ............ |

Assessor's Identification Number     125-0253-017-0000

Bankers Systems © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA  3/10/2004                    (page 6 of 6)
VMP®-C465(CA) (0403).01

**IndyMac Mortgage Services,**
a division of OneWest Bank®, FSB
6900 Beatrice Drive • Kalamazoo, MI 49009



*Ocwen Loan Services, LLC*
HELPING HOME OWNERS IS WHAT WE DO!
WWW.OCWENCUSTOMERS.COM

O C W E N

## NOTICE OF SERVICING TRANSFER TO OCWEN LOAN SERVICING, LLC



0001489 02 AB 0.381 **AUTO  T20 1325 95624-201899  -C01-P00000-I2

իիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիի

GIL RAPOSO
JOANNE RAPOSO
9090 LOCUST ST
ELK GROVE CA 95624-2016

OCWEN LOAN #:
PRIOR LOAN #:
PROPERTY ADDRESS:     9090 LOCUST ST
ELK GROVE CA 95624

11/15/2013

Dear Customer(s):

Effective 12/01/2013, IndyMac Mortgage Services, a division of OneWest Bank, FSB (IndyMac) will transfer the servicing of your Home Equity Line of Credit (HELOC) to Ocwen Loan Servicing, LLC (Ocwen). The transfer of the servicing of your HELOC does not affect any term or condition of your HELOC agreement, other than terms directly related to the servicing of your loan. Your account number will change, and the new account number is noted above. Key information regarding the servicing of your account is provided below.

If your Loan is a HELOC that is currently active for draws:

- Please discontinue using any remaining Home Equity Line of Credit checks you have from IndyMac. You will receive a new checkbook with your new checking account number from Ocwen.

- **IndyMac will "return to maker" any checks drawn on your account after 12/01/2013. These will be unpaid even if you have sufficient available funds in your account.**

- If you need to access the available funds in your Home Equity Line of Credit while you are waiting for your new checkbook, please call the Ocwen Customer Care Center at (800) 746-2936 for information regarding how to access your funds.

- You will no longer be able to access your line using the credit card as Ocwen does not offer this feature.

Should you have questions relating to the transfer of servicing or need information regarding your account prior to 12/01/2013, please contact IndyMac's Customer Care Department at (800) 781-7399.

New Servicer Contact Information:
As of 12/01/2013, Ocwen's Customer Care Center will assist you with questions regarding the transfer of servicing or any other questions relating to your account. You may reach Ocwen's Customer Care Center at (800) 746-2936 Monday through Friday between 8:00 am ET to 9:00 pm ET, Saturday 8:00 am ET to 5:00 pm ET or Sunday 9:00 am ET till 9:00 pm ET. Information concerning Ocwen and your mortgage loan may also be found online at www.ocwencustomers.com. You can also obtain information using Ocwen's Automated Telephone system or by speaking with a Customer Care Center Representative. Please be sure to have your account number available when you call.

As of 12/01/2013, all written inquiries should be sent to Ocwen at the following address. Please be sure to indicate your account number on all correspondence to ensure prompt response to your inquiry.

Ocwen Loan Servicing, LLC
Attn: Customer Service Department
P.O. Box 24738
West Palm Beach, FL 33416-4738

Making Payments:
The date that IndyMac will stop accepting a payment from you is 11/30/2013. The date that Ocwen will start accepting payments from you is 12/01/2013. Please make all checks payable to Ocwen and send all payments due on or after 12/01/2013 to the following address on the reverse side. If you use a Bill Pay Service, you will also need to inform them of this new payment address.

For Western Union Quick Collect users, you can find the location nearest to you by calling (800) 238-5772 or visiting www.westernunion.com and clicking on "Find a Location". At the location, please pay to name "OCWEN" and provide the loan number.

ACH (Automated Payments) or One-time Web Payments
Automatic monthly payments or one-time web payments can be setup and managed from our website at www.ocwencustomers.com.

---

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

# EXHIBIT 3

012

**IndyMac Mortgage Services,**
a division of OneWest Bank®, FSB
6900 Beatrice Drive • Kalamazoo, MI 49009

*Ocwen Loan Services, LLC*
HELPING HOME OWNERS IS WHAT WE DO!
WWW.OCWENCUSTOMERS.COM



OCWEN

### NOTICE OF SERVICING TRANSFER

**Western Union Quick Collect**
Code City: OCWEN
State: FLORIDA
Reference: OCWEN LOAN NUMBER:
7190561287
Agent Locator: (800) 325-6000

**MoneyGram®**
Receiver Code: 2355
Payable To: OCWEN LOAN SERVICING,
LLC
City: ORLANDO
State: FLORIDA
Reference: OCWEN LOAN NUMBER:
7190561287
Agent Locator: (800) 926-9400

**Check Payment Via Regular Mail**
Address:
Ocwen Loan Servicing, LLC
P.O. Box 6440
Carol Stream, IL 60197-6440

Please be sure to always include your
Ocwen loan number with your payment.

If you are currently enrolled in IndyMac's automated payment program (ACH) and your monthly payments are automatically
withdrawn from your bank account, the service WILL NOT automatically continue with Ocwen. After November 4th, Ocwen
automatic payments can be setup by visiting www.OcwenCustomers.com or by contacting Customer Service at 1-800-746-2936.
We have included a temporary payment coupon at the end of this letter.

Ocwen NMLS #1852
OneWest/IndyMac NMLS#541760

Taxes and Insurance:
If you are currently responsible for payment of your real estate taxes and/or homeowners insurance, you will continue to be
responsible for payment of these items after your account transfers to Ocwen.  To ensure our records accurately reflect your
insurance carrier and taxing authority, you may receive a letter of verification from Ocwen shortly after the transfer.
Additionally, it is important to contact your insurance agency to ensure that (i) Ocwen receives proof of hazard insurance (with
flood and/or windstorm coverage, as applicable) on your property and (ii) Ocwen is named as the beneficiary in the Mortgagee
Clause of your policy. If your mortgage payment includes escrow for taxes or insurance, please take the necessary steps to have
all future bills forwarded to:

**INSURANCE**
Ocwen Loan Servicing, LLC
ISAOA
P.O. Box 6723
Springfield, OH  45501-6723
E-mail: updateinsurance@ocwen.com
Insurance Center: (866)825-9265
Insurance Center Fax: (888)882-1816

**PROPERTY TAXES**
Ocwen Loan Servicing, LLC
Attn: Tax Department
P.O. Box 24665
West Palm Beach, FL 33416-4665
Customer Care Center: (800)746-2936

Year-end Interest Statement (IRS Form 1098):
By January 31 of each year, you will be mailed an Annual Tax and Interest Statement from each company that has serviced your
loan the prior year.  Each statement will contain IRS reporting information for the time your loan was serviced by each servicer.

Optional Insurance:
The transfer of servicing rights may affect the terms of, or the continued availability of mortgage life, disability insurance, or
any other type of optional insurance.  Not everyone has this type of insurance, but if you do, please be advised that it may not
transfer to Ocwen Loan Servicing, LLC.  Unless you are notified in writing by Ocwen, your insurance will transfer with your
loan.

Except in limited circumstances, the law requires that your present Servicer send you this notice at least fifteen (15) days
before the effective date of transfer.  Your new Servicer must also send you this notice no later than fifteen (15) days after this
effective date.  In this case, all necessary information is combined in this one notice.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that
purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not
intended as and does not constitute an attempt to collect a debt.*

013

**IndyMac Mortgage Services,**
a division of OneWest Bank®, FSB
6900 Beatrice Drive • Kalamazoo, MI 49009

*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!
WWW.OCWENCUSTOMERS.COM



O C W E N



## NOTICE OF SERVICING TRANSFER

The following notice applies if your HELOC was modified under the HAMP 2MP program and converted from an open-end HELOC to a closed end loan with amortizing monthly payments:

*Except in limited circumstances, the law requires that your present Servicer send you this notice at least fifteen (15) days before the effective date of transfer. Your new Servicer must also send you this notice no later than fifteen (15) days after this effective date. In this case, all necessary information is combined in this one notice.*

*You should be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 USC 2605):*

*During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old Servicer before its due date may not be treated by the new loan Servicer as late, and a late fee may not be imposed on you.*

*Section 6 of RESPA (12 USC 2605) gives your certain consumer rights. If you should need to send a "qualified written request" to your loan Servicer concerning the servicing of your loan, your Servicer must provide you with a written acknowledgement within twenty (20) business days of receipt of your request. A "qualified written request" is defined as a written correspondence, other than notice in a payment coupon or other payment medium supplied by the Servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to:*

| | |
|---|---|
| *If to OneWest/IndyMac.:* | *If to Ocwen:* |
| *IndyMac Mortgage Services* | *Ocwen Loan Servicing, LLC* |
| *Attn: Correspondence Research* | *Attn: Research Department* |
| *P.O. Box 4045* | *P.O. Box 24736* |
| *Kalamazoo, MI 49003-4045* | *West Palm Beach, FL 33416-4736* |

*Not later than sixty (60) business days after receiving your request, your Servicer must make appropriate corrections to your account and provide you with a written clarification regarding any dispute, or in some circumstances, a notice of a fifteen (15) business day extension. During this period, your Servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the Servicer from initiating foreclosure if proper grounds exist under the mortgage documents. A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.*

*Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where Servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.*

Please retain this information with your financing agreement documentation. We look forward to working with you and providing you with the highest quality customer care service.

**Ocwen Loan Servicing, LLC is a debt collector attempting to collect a debt: any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.**

**IndyMac is a debt collector attempting to collect a debt and any information obtained will be used for that purpose. If you are not obligated on the debt or if the debt has been discharged in a bankruptcy proceeding, this is for informational purposes only and is not an attempt to assess or collect the debt from you personally.**

---

*Please Detach below and include with your monthly payment.*

........................................................................................................................................



O C W E N

Note: If your loan is current, any excess funds will first be applied to outstanding amounts due and then additional principal.

**Payment Coupon**

GIL. RAPOSO

Account Number:

☐ Check box if your contact information has changed, update on the back

| | |
|---|---|
| **AMOUNT DUE** | $ |
| Additional Principal: | $ |
| Additional Escrow: | $ |
| Other: (Please Specify) | $ |
| Total Enclosed: | $ |

OCWEN
PO BOX 6440
CAROL STREAM IL 60197-6440

**014**

*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!
WWW.OCWENCUSTOMERS.COM



**OCWEN**

At Ocwen Loan Servicing, we understand the importance of homeownership. We're dedicated to providing you with assistance and information you need about your mortgage loan, as well as additional products you may need as a homeowner. To get started, visit **OcwenCustomers.com**, select "New Customers" and sign up as a new user with your new Ocwen loan number.

**It's easy to manage your account online anytime at OcwenCustomers.com.**
**Once registered, you will be able to:**

> View details of your mortgage account
>
> Update or remove Registered Users
>
> Update your address, email, and phone number
>
> Review your monthly statement detail and history
>
> Confirm receipt of your last payment
>
> Examine your year-end statement
>
> Check your escrow summary
>
> Check your year-to-date interest and taxes paid
>
> Select communication preferences to meet your needs
>
> Explore homeowner programs available to you such as the Equity Accelerator® program
>
> Communicate via a secure messaging center

*On the proceeding two pages you may find answers to common questions. These are a sample exerted from the Frequently Asked Questions pages online at ocwencustomers.com.*

## General Accounts & Loan Payments

**What changes can I expect after the transfer of my Home Equity Loan to Ocwen is complete?**
Most of the services available by IndyMac Mortgage Services (Prior Servicer) will still be provided by Ocwen. Rest assured. We have taken the proper measures to ensure that this transition is as seamless to you as possible and that your questions and requests will be taken with the utmost urgency by our dedicated team of Home Equity Loan representatives, who are only a phone call away. Please note there are certain services from IndyMac that Ocwen will not provide as part of this transfer of service. Our Home Equity Loan representatives are prepared to process any outgoing wire transfer requests and ACH payments toward your Home Equity Loan in an accurate and timely manner. As such, Ocwen will not support automated requests with the use of a personal identification number (PIN). Ocwen has also designed a comprehensive statement comprised of all the information pertinent to your Home Equity Loan. Ocwen will not support the process of a separate personalized statement in any manner other than the statement described before. At Ocwen we believe that with our dedicated Home Equity Loan representatives, along with our comprehensive statement design, we have added value to your new relationship.

**What if I made a payment to my Prior Servicer, but it has not posted yet?**
Your Prior Servicer will forward your payment to us within 15 business days. It may take a few days for us to receive and apply the payments, but this will not negatively impact your account or your credit report. To check on the status of your account, you may go to ocwencustomers.com.

**How can I get information about my account?**
You can access Ocwen's website and/or automated telephone system which will provide you with information regarding your account 24 hours a day. These systems have been designed to provide you with the most frequently requested services or information. This includes, but is not limited to, options to obtain payment histories, a payoff or reinstatement quote, status of your credit reporting, payment options, status of tax and insurance payments, financial hardship options and frequently asked questions (FAQ). Website: www.ocwencustomers.com. Telephone Number: (800) 746-2936.

**015**



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!
WWW.OCWENCUSTOMERS.COM

OCWEN



**If my account is past due and I have not made a payment arrangement with my Prior Servicer, how can I make payment arrangements or get assistance due to financial difficulties?**
We offer a number of specialized programs designed to assist borrowers who are past due. Please go to www.ocwencustomers.com, click on "Mortgage Customers" and then log in with your User ID and Password. If you need to create a User ID and Password, select the "New Customers icon". Once you log in, select the "Financial Difficulties" icon. This will allow you to download an application package.

**If my loan is currently frozen, will this transfer of servicing mean my funds are now available?**
No, lines currently unavailable for draws will remain frozen. You will not receive a new checkbook at this time.

**If my account is current, where do I send my payments?**

Payment Processing Address
Ocwen Loan Servicing, LLC
PO Box 6440
Carol Stream, IL 60197-6440

For Overnight Express Payments
Ocwen Loan Servicing Attn: Cashiering
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

**Are there any special requirements for hazard insurance?**
It is important to contact your insurance agency to ensure that (i) Ocwen receives proof of hazard insurance on your property (with flood and/or windstorm coverage, as applicable) and (ii) Ocwen is named as the beneficiary in the Mortgagee Clause of your policy. If your mortgage payment includes escrow for taxes or insurance, please take the necessary steps to have all future bills forwarded to:

**INSURANCE**
Ocwen Loan Servicing, LLC
ISAOA
P. O. Box 6723
Springfield, OH 45501-6723
Phone: (866) 825-9265
updateinsuranceinfo@ocwencustomers.com

**PROPERTY TAXES**
Ocwen Loan Servicing, LLC
Attn: Tax Department
P.O. Box 24665
West Palm Beach, FL 33416-4665
Phone: (800)746-2936

## Mortgage Modifications

**I am currently on a trial modification plan and still have payments remaining before it becomes a final/permanent modification. What do I do?**
You should continue making your monthly payments as required in the modification plan. Your Prior Servicer will be providing Ocwen the status of your modification. Please allow 30 days to review and process your information. It is not necessary to call for a status prior to 30 days, as the agent will not have any additional information to provide you.

**How do I contact my relationship manager?**
To contact your relationship manager contact our Customer Care Center at (800) 746-2936 and request an appointment with your Relationship Manager.

**I just submitted my modification application to the Prior Servicer. Should I send this to Ocwen again?**
Your Prior Servicer will provide Ocwen with the status of your modification application and copies of your documentation. It is not necessary to re-send the documents to Ocwen at this time. Please allow up to 30 days from the date of the account transfer for Ocwen to process your application documentation and determine your eligibility. It is not necessary to call prior to 30 days as the agent will not have any additional information to provide to you.

**I received a notice from my Prior Servicer that I was denied for the Making Home Affordable Program. I am still having financial difficulty; what can I do?**
We may still be able to help you. We offer a number of specialized programs designed to assist borrowers who are past due. Please go to www.ocwencustomers.com for more information and to download an application for assistance.

**I received a notice from my Prior Servicer that they were missing documents for my modification but I have not sent them yet; do I send these documents to Ocwen now?**
Yes, please send the documents to Ocwen via e-mail at mod@ocwencustomers.com or fax the documents to (407) 737-6174. Your Prior Servicer will be providing Ocwen with the status of your modification (trial plan or initial application), copies of your initial application and information identifying the missing documentation. Please allow up to 30 days from the date you send the documentation for Ocwen to process your documentation.

### IMPORTANT INFORMATION ABOUT THIS TRANSFER

You should also be aware of the following information which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. Section 2605). During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old Servicer before its due date may not be treated by the new loan Servicer as late, and a late fee may not be imposed on you.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

016



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!
WWW.OCWENCUSTOMERS.COM

**OCWEN**

### IMPORTANT INFROMATION ABOUT THIS TRANSFER (CONTINUED)

Section 6 of RESPA also gives you certain consumer rights. If you send a "qualified written request" to Ocwen Loan Servicing (Attention Customer Service Department, P.O. Box 24738 West Palm Beach, FL 33416) concerning the servicing of your loan, Ocwen must provide you with a written acknowledgement within 20 business days of receipt of your request. A "qualified written request" is defined as a written correspondence, other than notice on a payment coupon or other payment medium supplied by the Servicer, which includes your name and account number and your reasons for the request. A "business day" is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Not later than 60 business days after receiving your request, Ocwen must make the appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-business-day period, Ocwen may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent Ocwen from initiating foreclosure if proper grounds exist under the mortgage documents.

Section 6 of RESPA also provides for damages and costs for individuals in circumstances where servicers are shown to have violated this section. You should seek legal advice if you believe your rights have been violated.

Disclaimer Regarding Mandatory Arbitration Provisions: If your account documents require you to submit disputes regarding your account to arbitration for resolution, such requirement is waived and will not be enforced against you. Such waiver, however, does not affect any rights you may have to require arbitration of disputes regarding your account.

Credit Reporting: You are hereby notified that we may report information about your account to credit reporting agencies. Late payments, missed payments, or other defaults on your account may also be reflected on your credit report.

Identity Theft Notice: If you would like to obtain information regarding identity theft, you may contact the Federal Trade Commission at www.ftc.gov/bcp/edu/microsites/idtheft/ OR by calling 1-877-ID-THEFT (1-877-438-4338).

Properties in California: The state Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 am or after 9 pm. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason that you may not receive personals calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may not contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at (877) FTC-HELP or www.ftc.gov.

Properties in Colorado: For information about the Colorado Fair Debt Collection Practices Act, see www.ago.state.co.us/cab.htm. A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.
Properties in Hawaii: Ocwen Loan Servicing, LLC is licensed by the Commissioner of Financial Institutions in Hawaii. Complaints and inquiries about the servicer may be submitted to the Commissioner.

Properties in Maryland: The Maryland Consumer Protection Act require us to disclose that if Ocwen fails to give written notice of this transfer or fails to make timely payments of taxes or insurance premiums (assuming the borrower has paid an amount to cover these costs) and Ocwen has received the tax bill or notice, Ocwen may face liability for any economic damages incurred by the borrower.

Properties in Minnesota: Borrowers on loans secured by property in Minnesota can direct complaints and inquiries and questions to the Ocwen Loan Servicing, LLC Customer Care Department at 1-800-746-2936 between 8:00 a.m. and 9:00 p.m. ET, Monday through Friday, from 8:00 a.m. to 5:00 p.m. ET on Saturday, or from 9:00 a.m. to 9:00 p.m. ET on Sunday or in writing to: P.O. Box 24738, West Palm Beach, FL 33416-4738. Each written complaint or question will be responded to within 15 days.

Properties in New York: Ocwen Loan Servicing, LLC is registered with the Superintendent of the New York State Banking Department. The borrower may file complaints and inquiries about Ocwen Loan Servicing, LLC with or obtain further information from the New York State Banking Department by calling the Department's Consumer Help Unit at 1-877-BANK-NYS or by visiting the Department's website at www.banking.state.ny.us.

Properties in North Carolina: Ocwen Loan Servicing, LLC is licensed by the North Carolina Commissioner of Banks (North Carolina Permit No. 3946) and complaints and inquiries about Ocwen Loan Servicing, LLC may be submitted to the Commissioner.

Properties in Texas: The State of Texas requires us to inform you that a registrant shall provide to the borrower of each residential mortgage loan the following notice not later than the 30th day after the registrant commences servicing the loan: Complaints and inquiries regarding the servicing of your mortgage should be sent to the Department of Savings and Mortgage Lending, 2601 N. Lamar, Suite 201, Austin, Texas 78705. Compliant Forms and Instructions may be downloaded and printed from the Departments website located at http://www.sml.state.tx.us or obtained from the Department upon request by mail at the address above, by telephone at its Toll-free Consumer Hotline at (877) 276-5550, by fax at (512) 475-1360, or by email at SML.info@SML.STATE.TX.US.

Attention Servicemembers and Dependents: The federal Service members Civil Relief Act and certain state laws provide important protection for you, including exceptions to foreclosure during military service and a period thereafter as provided by federal law.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

017

After Recording Return To:
Ocwen Loan Servicing, LLC
5720 Premier Park Drive, Bldg. 3
West Palm Beach, FL 33407

LIMITED POWER OF ATTORNEY

*3529*

KNOW ALL MEN BY THESE PRESENTS, that Deutsche Bank National Trust Company, a national banking association organized and existing under the laws of the United States, and having its usual place of business at 1761 East St. Andrew Place, Santa Ana, California, 92705, as Indenture Trustee (the "Indenture Trustee") pursuant to those certain Sale and Servicing Agreements referenced on Exhibit A (the "Agreements") by and between Indenture Trustee and OCWEN LOAN SERVICING, LLC (the "Servicer"), hereby constitutes and appoints the Servicer, by and through the Servicer's officers, the Indenture Trustee's true and lawful Attorney-in-Fact, in the Indenture Trustee's name, place and stead and for the Indenture Trustee's benefit, in connection with all mortgage loans serviced by the Servicer pursuant to the Agreement solely for the purpose of performing such acts and executing such documents in the name of the Indenture Trustee necessary and appropriate to effectuate the following enumerated transactions in respect of any of the mortgages or deeds of trust (the "Mortgages" and the "Deeds of Trust" respectively) and promissory notes secured thereby (the "Mortgage Notes") for which the undersigned is acting as Indenture Trustee for various certificateholders (whether the undersigned is named therein as mortgagee or beneficiary or has become mortgagee by virtue of endorsement of the Mortgage Note secured by any such Mortgage or Deed of Trust) and for which OCWEN LOAN SERVICING, LLC is acting as the Servicer.

This Appointment shall apply only to the following enumerated transactions and nothing herein or in the Agreement shall be construed to the contrary:

1. The modification or re-recording of a Mortgage or Deed of Trust, where said modification or re-recording is solely for the purpose of correcting the Mortgage or Deed of Trust to conform same to the original intent of the parties thereto or to correct title errors discovered after such title insurance was issued; provided that (i) said modification or re-recording, in either instance, does not adversely affect the lien of the Mortgage or Deed of Trust as insured and (ii) otherwise conforms to the provisions of the Agreement.

2. The subordination of the lien of a Mortgage or Deed of Trust to an easement in favor of a public utility company of a government agency or unit with powers of eminent domain; this section shall include, without limitation, the execution of partial satisfactions/releases, partial reconveyances or the execution or requests to trustees to accomplish same.

3. The conveyance of the properties to the mortgage insurer, or the closing of the title to the property to be acquired as real estate owned, or conveyance of title to real estate owned.

EXHIBIT 4                    018

4.    The completion of loan assumption agreements.

5.    The full satisfaction/release of a Mortgage or Deed of Trust or full conveyance upon payment and discharge of all sums secured thereby, including, without limitation, cancellation of the related Mortgage Note.

6.    The assignment of any Mortgage or Deed of Trust and the related Mortgage Note, in connection with the repurchase of the mortgage loan secured and evidenced thereby.

7.    The full assignment of a Mortgage or Deed of Trust upon payment and discharge of all sums secured thereby in conjunction with the refinancing thereof, including, without limitation, the assignment of the related Mortgage Note.

8.    The full enforcement of and preservation of the Indenture Trustee's interests in the Mortgage Notes, Mortgages or Deeds of Trust, and in the proceeds thereof, by way of, including but not limited to, foreclosure, the taking of a deed in lieu of foreclosure, or the completion of judicial or non-judicial foreclosure or the termination, cancellation or rescission of any such foreclosure, the initiation, prosecution and completion of eviction actions or proceedings with respect to, or the termination, cancellation or rescission of any such eviction actions or proceedings, and the pursuit of title insurance, hazard insurance and claims in bankruptcy proceedings, including, without limitation, any and all of the following acts:

a.    the substitution of trustee(s) serving under a Deed of Trust, in accordance with state law and the Deed of Trust;

b.    the preparation and issuance of statements of breach or non-performance;

c.    the preparation and filing of notices of default and/or notices of sale;

d.    the cancellation/rescission of notices of default and/or notices of sale;

e.    the taking of deed in lieu of foreclosure;

f.    the filing, prosecution and defense of claims, and to appear on behalf of the Trustee, in bankruptcy cases affecting Mortgage Notes, Mortgages or Deeds of Trust;

g.    the preparation and service of notices to quit and all other documents necessary to initiate, prosecute and complete eviction actions or proceedings;

019

h.      the tendering, filing, prosecution and defense, as applicable, of hazard insurance and title insurance claims, including but not limited to appearing on behalf of the Indenture Trustee in quiet title actions; and

i.       the preparation and execution of such other documents and performance of such other actions as may be necessary under the terms of the Mortgage, Deed of Trust or state law to expeditiously complete said transactions in paragraphs 8.a. through 8.h. above.

9.      With respect to the sale of property acquired through a foreclosure or deed-in lieu of foreclosure, including, without limitation, the execution of the following documentation:
   a.      listing agreements;
   b.      purchase and sale agreements;
   c.      grant/warranty/quit claim deeds or any other deed causing the transfer of title of the property to a party contracted to purchase same;
   d.      escrow instructions; and
   e.      any and all documents necessary to effect the transfer of property.

10.     The modification or amendment of escrow agreements established for repairs to the mortgaged property or reserves for replacement of personal property.

The undersigned gives said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully as the undersigned might or could do, and hereby does ratify and confirm to all that said Attorney-in-Fact shall be effective as of April 6, 2015.

This appointment is to be construed and interpreted as a limited power of attorney. The enumeration of specific items, rights, acts or powers herein is not intended to, nor does it give rise to, and it is not to be construed as a general power of attorney.

Solely to the extent that the Servicer has the power to delegate its rights or obligations under the Agreement, the Servicer also has the power to delegate the authority given to it by Deutsche Bank National Trust Company, as Indenture Trustee, under this Limited Power of Attorney, for purposes of performing its obligations and duties by executing such additional powers of attorney in favor of its attorneys-in-fact as are necessary for such purpose. The Servicer's attorneys-in-fact shall have no greater authority than that held by the Servicer.

Nothing contained herein shall: (i) limit in any manner any indemnification provided to the Indenture Trustee under the Agreement, (ii) limit in any manner the rights and protections afforded the Indenture Trustee under the Agreement, or (iii) be construed to grant the Servicer the power to initiate or defend any suit, litigation or proceeding in the name of Deutsche Bank National Trust Company except as specifically provided for herein. If the Servicer receives any

020

notice of suit, litigation or proceeding in the name of Deutsche Bank National Trust Company, then the Servicer shall promptly forward a copy of same to the Indenture Trustee.

This limited power of attorney is not intended to extend the powers granted to the Servicer under the Agreement or to allow the Servicer to take any action with respect to Mortgages, Deeds of Trust or Mortgage Notes not authorized by the Agreement.

The Servicer hereby agrees to indemnify and hold the Indenture Trustee and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of or in connection with the exercise by the Servicer, or its attorneys-in-fact, of the powers granted to it hereunder.   The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the Agreement or the earlier resignation or removal of the Indenture Trustee under the Agreement.

This Limited Power of Attorney is entered into and shall be governed by the laws of the State of New York, without regard to conflicts of law principles of such state.

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of Attorney; and may be satisfied that this Limited Power of Attorney shall continue in full force and effect and has not been revoked unless an instrument of revocation has been made in writing by the undersigned.

021

IN WITNESS WHEREOF, Deutsche Bank National Trust Company, as Indenture Trustee for affixed Agreements listed on Exhibit A has caused its corporate seal to be hereto affixed and these presents to be signed and acknowledged in its name and behalf by a duly elected and authorized signatory this 6th day of April 2015.

Deutsche Bank National Trust Company,
as Indenture Trustee for Trustee under the Agreements

By: _____
Name: Karlene Benvenuto
Title: Assistant Vice President

Witness: _____
Cynthia Valverde

Witness: _____
Corey Robinson

Prepared by: _____
Name: Jerome Jackson
Title:    Trust Administrator
Address:    Deutsche Bank National Trust Company
            1761 E. Saint Andrew Place
            Santa Ana, CA 92705

5

022

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF ORANGE

On April 6, 2015 before me, Imelda Flores, a Notary Public, personally appeared Karlene Benvenuto, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that **she** executed that same in **her** authorized capacity, and that by **her** signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.
(SEAL)

_____
Signature of Notary Public

IMELDA FLORES
Commission # 1991652
Notary Public - California
Orange County
My Comm. Expires Sep 20, 2016

023

Exhibit A

Indymac Home Equity Mortgage Loan Asset-Backed Trust, Series 2006-H2 pursuant to that Sale and Servicing Agreement dated as of June 19, 2006 (the "Agreement") by and between Indymac ABS, Inc., as Depositor (the "Depositor") and Indymac Bank, F.S.B., as Seller and Servicer (the "Master Servicer and Securities Administrator"), Ocwen Loan Servicing LLC as successor servicer to One West Bank, N.A, as successor servicer to IndyMac Bank, FSB, as master servicer (the "Master Servicer"), and Deutsche Bank National Trust Company, as Indenture Trustee.

Indymac Home Equity Mortgage Loan Asset-Backed Trust, Series 2006-H3 pursuant to that Sale and Servicing Agreement dated as of September 14, 2006 (the "Agreement") by and between Indymac ABS, Inc., as Depositor (the "Depositor") and Indymac Bank, F.S.B., as Seller and Servicer (the "Master Servicer and Securities Administrator"), Ocwen Loan Servicing LLC as successor servicer to One West Bank, N.A, as successor servicer to IndyMac Bank, FSB, as master servicer (the "Master Servicer"), and Deutsche Bank National Trust Company, as Indenture Trustee.

Indymac Home Equity Mortgage Loan Asset-Backed Trust, Series 2006-H4 pursuant to that Sale and Servicing Agreement dated as of December 12, 2006 (the "Agreement") by and between Indymac ABS, Inc., as Depositor (the "Depositor") and Indymac Bank, F.S.B., as Seller and Servicer (the "Master Servicer and Securities Administrator"), Ocwen Loan Servicing LLC as successor servicer to One West Bank, N.A, as successor servicer to IndyMac Bank, FSB, as master servicer (the "Master Servicer"), and Deutsche Bank National Trust Company, as Indenture Trustee.

024

**Nichole L. Glowin**

| | |
|---|---|
| **To:** | T. Robert Finlay; Robin Wright |
| **Cc:** | IIP; Dominic, Gilbertbalaraj |
| **Subject:** | - Gil Raposo - |
| **Attachments:** | Notification - Default Motion/Judgment |

Counsel,

_                 ₃ active matter in CL for which you are managing counsel hence please review and handle as you deem appropriate.

*Thank You,*
*Hema Dhapola*
*Litigation Analyst*
*Law Dept,*
*Ocwen Financial Solutions*

# EXHIBIT 5