Peter Cianchetta, SBN: 220971
Cianchetta and Associates
8788 Elk Grove Blvd., Suite 2A
Elk Grove, CA 95624-1811
Tel: 916-685-7878
Email: plc@eglaw.net

Attorneys for Plaintiff

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re<br><br>Gil Mariano Raposo and Joanne Carol Raposo<br><br>Debtor.<br>_____<br>Gil Mariano Raposo and Joanne Carol Raposo,<br><br>               Plaintiff,<br><br>      v.<br><br>Ocwen Loan Servicing, LLC, CIT Bank N.A., the successor to OneWest Bank, FSB, and Deutsche Bank National Trust Company, as Indenture Trustee for Indymac Home Equity Mortgage Loan Asset-Backed Trust, Series 2006-H4,<br><br>             Defendants. | Case No. 2009-27153<br><br>Chapter 13<br><br>Adversary No.: 2015-02095<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF TO VOID LIEN PURSUANT TO 11 U.S.C. §506(a); RELATED STATED CAUSES OF ACTION; DETERMINATION OF DISCHARGEABILITY OF DEBT UNDER FRBP §4007** |

Plaintiff Gil Mariano Raposo and Joanne Carol Raposo, Chapter 13 Debtor and

Plaintiff herein, alleges as follows:

///

///

---

**First Amended Adversary Complaint – Lien Stripping**

**PARTIES**

1.      Plaintiff, Gil Mariano Raposo and Joanne Carol Raposo, are debtors in bankruptcy Case No. 2009-27153 and reside at 9090 Locust Street, Elk Grove, CA  95624.

2.      Defendant, Ocwen Loan Servicing, LLC and, is a Delaware Corporation.

3.      Defendant, CIT Bank N.A., the successor to OneWest Bank, FSB, is a national bank.

4.      Defendant, Deutsche Bank National Trust Company, as Indenture Trustee for Indymac Home Equity Mortgage Loan Asset-Backed Trust, Series 2006-H4, is a national bank.

**JURISDICTIONAL ALLEGATIONS**

5.      This adversary proceeding arises out of and is related to the above-captioned Chapter 13 case of Gil Mariano Raposo and Joanne Carol Raposo, Case No. 2009-27153, of which the Plan was completed on September 8, 2014 and the discharge was granted on November 3, 2014. The plan and Motion to Value related to the lien with Defendants was approved by the Court and provided that the Defendants lien was void upon completion of the plan. Therefore this court has jurisdiction over this matter pursuant to 28 U.S.C. §§157, 1334.

6.      Defendant herein has a claim against Plaintiff, as defined by 11 U.S.C. §101(5).  The complaint, as set forth herein, involves the voiding of the secured status of a claim pursuant to 11 U.S.C. §506, and as such, constitutes a "core" proceeding pursuant to 28 U.S.C. §157(b)(2).

7.      Plaintiff contends that the State causes of action in this are part of the core proceeding as they would only arise but for the initial order to value the collateral, resulting approved plan and completion of the plan.

8.      Plaintiff further contends that the State causes of action are not preempted by the bankruptcy code as the bankruptcy code does not provide a specific remedy at the time of this complaint being filed as the lien removal is a State law by-product of the Bankruptcy Courts determination that the defendant's security was rendered void at the completion of the plan.

---

**First Amended Adversary Complaint – Lien Stripping**

-2-

9.    To the extent that any part of this matter is deemed non-core, the Plaintiff consents to this Court in rendering final judgment.

10.    Venue for this adversary proceeding is proper pursuant to 28 U.S.C. §1409(a).

## FACTUAL ALLEGATIONS

11.    Plaintiff owns and resides in a parcel of real property commonly known as 9090 Locust Street, Elk Grove, CA  95624 (the "PROPERTY").

12.    As of the date of the filing of the Chapter 13 bankruptcy case herein, the PROPERTY had a fair market value of approximately $187,000.00.

13.    Plaintiff filed above-captioned Chapter 13 case on April 16, 2009.

14.    In conjunction with plan approval, the debtor secured an order valuing the secured collateral of Defendants at zero pursuant to 11 U.S.C. §506(a) on September 11, 2010.

15.    A copy of the plan confirmed by the Court is attached as Exhibit A.

16.    A copy of the Order confirming plan is attached as Exhibit B.

17.    A copy of the Order valuing the collateral of Defendants is attached as Exhibit C. Plaintiff contends this is a final non-appealable order.

18.    As of April 16, 2009, the following liens encumbered the property: A first Deed of Trust in favor of BAC Home Loans Servicing, LP (now serviced by Greentree Servicing LLC in the amount of ~$613.319.00 ("FIRST TRUST DEED"), a true and correct copy of the Note and Trust Deed is attached as Exhibit D and a Second Deed of Trust in favor of OneWest Bank, FSB now serviced by Ocwen Loan Servicing, LLC, ("SECOND TRUST DEED"), a true and correct copy of the trust deed is attached as Exhibit E.

19.     OneWest Bank, FSB now serviced by Ocwen Loan Servicing, LLC  has made a claim on Plaintiff related to the obligation in the amount of ~$66,586.00.

20.    As of the date of filing of the Chapter 13 bankruptcy case herein, only the FIRST TRUST DEED was a secured claim, as defined by 11 U.S.C. §506(a).

21.    Plaintiff completed their Plan on September 8, 2014.

22.    A copy of the Discharge of Debtor is attached as Exhibit F.

**First Amended Adversary Complaint – Lien Stripping**

23.     Therefore, Defendants were required to reconvey their security interest effective upon plan completion.

24.     Also, the procedure employed to secure the order valuing the collateral is consistent with the holding in <u>In re Zimmer</u>, 313 F.3d 1220 (9th Cir. 2002) adopting the conclusion of <u>In re Lam</u>, 211 B.R. 36 (9th Cir. B.A.P 1997).

25.     A due diligence review of the Sacramento County Recorder's Office reveals that no Deed of Reconveyance has been recorded as of the date of this Adversary Proceeding[1].

### I. FIRST CLAIM FOR RELIEF
### DECLARATORY RELIEF/QUIET TITLE

26.     Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

27.     Plaintiff alleges that the real Property became property of the bankruptcy estate upon the filing of the petition which commenced the underlying chapter 13 case.

28.     An actual controversy exists between Plaintiff and the Defendants with respect to the validity, priority, and extent of liens or other interest in the real property of the Plaintiff.

29.     Plaintiff seeks a Declaratory Judgment pursuant to FRBP §7001(9) as the relief requested requires the voiding and subsequent release of lien of Defendant thereby invoking FRBP §7001(2) and FRBP §7001(6) to quiet the title of the Plaintiff.

30.     Plaintiff is informed and believes that the SECOND TRUST DEED is completely unsecured and under applicable law has been determined to be a general unsecured claim.

31.     This Court has the authority under applicable law, including 11 U.S.C. §1322 (b), to confirm a chapter 13 plan which treats the holder of the SECOND TRUST DEED as an unsecured creditor.  Said plan was confirmed by the Court.

32.     Under applicable law, upon completion of Debtor's chapter 13 plan, the Court has the authority to void the SECOND TRUST DEED if the creditor does not remove the lien as required by State law and to quiet the title of the Plaintiff.

33.     The debtor has completed their Chapter 13 Plan which required the Defendant to

---

[1] After the initial case was filed, Ocwen Loan Servicing did record a reconveyance for which Plaintiff contends was defective as the Substitution of Trustee was not executed by the beneficiary, Deutsche Bank.

**First Amended Adversary Complaint – Lien Stripping**

reconvey their loan.

34.     Plaintiff has made repeated demands for the reconveyance.

35.     Causing further harm to the Plaintiff, it was learned that Defendant Ocwen filed a reconveyance in September 2015, after the initial adversary complaint was filed purporting to reconvey the second deed of trust.  However, unknown to Plaintiff, but known to Ocwen, was that Deutsche Bank was the successor in interest and therefore the proper party to execute a substitution of trustee to have an effective reconveyance.

36.     At present, only Indymac Bank, who was succeeded by OneWest Bank of which was succeed by CIT Bank, has the recorded beneficial interest in the second deed of trust.

37.     All of this facts have clouded the title of Plaintiff of which Plaintiff requests that the court quiet the title of the Plaintiff.

38.     The Plaintiff/Debtor requests judgment from the Court to void the SECOND DEED OF TRUST, thereby quieting title, recorded in Sacramento County on October 5, 2006, in Book 20061005, Page 00967, in a form allowing for recording with the Sacramento County Recorder related to the legal description of:

> All that certain real property in the City of Elk Grove, County of Sacramento, State of California, described as follows:
>
> THE NORTH 1/2 OF LOT 20 OF J.H. KERR'S ADDITION TO ELK GROVE, ACCORDING TO THE OFFICIAL PLAT THEREOF, FILED IN THE OFFICE OF THE RECORDER OF SACRAMENTO COUNTY, CALIFORNIA IN BOOK 1 OF MAPS, MAP NO. 28.
>
> APN: 125-0253-017-0000

39.     Consistent with a Deed of Reconveyance, which should have been recorded by the Defendant, Plaintiff requests that contained in any judgment is language equivalent to a Deed of Reconveyance that directs that title be reconveyed (returned) to the Plaintiff which includes "all right, title and interest" acquired by said Deed of Trust to Defendant related to the 2nd Deed of Trust they hold.  This would, in effect, "quiet the title" of the Plaintiff.

40.     The SECOND DEED OF TRUST contains an attorney's fees and cost provision (see

---

**First Amended Adversary Complaint – Lien Stripping**

Exhibit E, "Deed of Trust", Page 4 of 6, ¶10). As such, under California Civil Code §1717, a reciprocal contractual attorneys' fees statute, the Plaintiff is entitled to reimbursement of attorney's fees. Plaintiff requests an award of attorney's fees as allowed for in the contract with Defendant.

41. Pleading alternative theories, that if Defendant contends that only the in personam liability has been discharged, Plaintiff seeks, pursuant to FRBP §4007(a)-(b), a determination that both the *in personam* and *in rem* liability of the debt has been fully discharged and any security interest voided.

## II. SECOND CLAIM FOR RELIEF
## <u>VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2941(d)</u>

42. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

43. On October 6, 2006 for a valuable consideration, made and delivered a HELOC Agreement ("the note") in the sum of $ ~$51,000.00.

44. On the same day, plaintiff executed and delivered to defendant, a certain trust deed ("the trust deed") recorded in Sacramento County, California covering the property.

45. Plaintiff, on or about, September 8, 2014, by Notice from Trustee, completed their Chapter 13 plan which required the Defendants to reconvey the Deed of Trust on said property.

46. Defendants were placed on additional notice by the BNC's notification of the filing of the Trustee's final report after the plan completion.

47. In spite of plaintiff's full compliance with the Court approved Chapter 13 plan defendants failed and refused, and continues to fail and refuse, to reconvey the deed of trust.

48. As a proximate result of this failure and refusal of defendants to reconvey, Plaintiff has been required to file an adversary proceeding, at substantial cost, which is a direct breach of Defendants statutory duty and has damaged Plaintiff by this cost.

49. California Civil Code §2941(b)(1) requires that within 30 days after an obligation secured by a deed of trust has been satisfied, the beneficiary or the assignee, Defendants

---

**First Amended Adversary Complaint – Lien Stripping**

herein, shall execute and deliver a full reconveyance.  This did not happen.

50.    Plaintiff contends that the obligation was satisfied upon completion of the plan.

51.    Defendant has a history of refusing to reconvey deeds of trust required to be removed upon completion of Chapter 13 cases and thereby it is commonplace that debtors are forced to file adversary proceedings to obtain reconveyances.

52.    More than 30 days have passed from the date that the Defendants time began in which to reconvey and Defendants have not reconveyed.

53.    California Civil Code §2941(d) provides that a violation of Civil Code §2941 shall make the violator, the Defendants herein, liable to the Plaintiff for all damages sustained by the Plaintiff.

54.    Title is being slandered by the Defendants by continuing the lien on the property.

55.    California Civil Code §2941(d) provides that a violation of Civil Code §2941 shall make the violator, the Defendants herein, liable to the Plaintiff for a statutory penalty of $500.00.

56.    Plaintiff hereby requests damages, as allowed for in Civil Code §2941, equal to all attorneys fees and costs, as allowed for in the contract between the parties, they will sustain as a result of bringing an action to enforce California Civil Code §2941 and a statutory penalty of $500.00.

### III. THIRD CLAIM FOR RELIEF
### (Unfair Practices under California Business & Professions Code Section 17200, et seq.)
### (AS TO OCWEN LOAN SERVICING ONLY)

57.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

58.    California Business & Professions Code Section 17200, et seq., prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice . . ." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

59.    As more fully described above (e.g. violating the civil code and issuing reconveyances by the improper party resulting in a cloud on the title of Plaintiff), Ocwen's acts and practices are likely to deceive, constituting a fraudulent business act or practice.  This conduct is

ongoing and continues to this date.

60.     Ocwen, one of the Defendants, is no stranger to litigation filed by various State Attorneys General regarding deceptive business practices.  As evidence herein, these acts merely continue.

61.     Specifically, Defendants engage in deceptive business practices with respect to demanding payments from Plaintiff and similarly situated Plaintiff's by:

> a)  Ignoring bankruptcy court order that Plaintiff's cured loan;

> b)  Issuing reconveyances they know fail to comply with the California Civil Code;

> c)  Failing to disclose the proper real parties in interest in an effort to save themselves money yet cloud and slander the title of Plaintiff.

62.     Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein, Defendants have violated several California laws and regulations and said predicate acts are therefore per se violations of California Business and Professions Code Section 17200, et seq.

63.     Plaintiff alleges that as direct and proximate result of the aforementioned acts, Defendants have prospered and benefited from their wrongful acts and have been unjustly enriched.

64.     Plaintiff has lost money and property and suffered injury in fact, and other members of the public falling victim to Defendants' schemes are likely to be injured.

65.     The harm to Plaintiff and to members of the general public outweighs the utility of Defendants' policy and practices.  Consequently, their policy and practices constitute an unlawful business act or practice within the meaning of Business and Professions Code §17200.

66.     Further, the foregoing conduct threatens an incipient violation of a consumer law, or violates the policy or spirit of such law or otherwise significantly threatens or harms competition.

**First Amended Adversary Complaint – Lien Stripping**

67.     Defendants' practices described above are likely to mislead the general public, and therefore, constitute a fraudulent business act of practice within the meaning of Business and Professions Code §17200.  The Defendants' unfair, unlawful, and fraudulent business practices and false and misleading advertising present a continuing threat to members of public in that other consumers will be defrauded into believing their loans are reconveyed when in fact they are not.

68.     Plaintiff is therefore entitled to injunctive relief as available under California Business and Professions Code Sec. 17200 and related sections.  These acts and practices, as described in the previous paragraphs, are unfair and violate Business and Professions Code § 17200 because their policies and practices described above violate all the statutes previously listed, and consequently, constitute and unlawful business act of practice within the meaning of Business and Professions Code § 17200.

### IV. FOURTH CLAIM FOR RELIEF
### SLANDER OF TITLE

20.     Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

21.     Defendants are falsely alleging an ownership interest in the property of Plaintiff by keeping the deed of trust of record.

22.     In doing so, Defendants are communicating to the public that they have an interest in the Plaintiffs property.

23.     Said public statements is disparaging of the Plaintiff's title.

24.     The statements on title are completely untrue, improper reconveyances have been provided and a proper reconveyance should have been recorded in conformity with California law.

25.     These untrue statements on the title are causing the Plaintiff to suffer actual damages.

26.     Said acts of slandering title are willful and intentional and acts of malice.

27.     The debtor has damages in an ongoing amount to be proven at trial.

28.     Plaintiff requests damages in the amount of $500,000.00 as punitive damages for the

outrageous conduct of the Defendants.

## V. FIFTH CLAIM FOR RELIEF
## ATTORNEY'S FEES

29.     Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

30.     Effective December 1, 2014, Plaintiff is no longer required to plead attorney's fees as a separate claim for relief.  However, in order to maintain consistency with the court holdings in this district, Plaintiff is pleading attorney's fees as a separate claim for relief for clarity.

31.     Plaintiff is entitled to attorney's fees by statute, Civil Code §2941, and pursuant to the terms of the contract between the parties.

32.     By contract, the note and Deed of Trust contains an attorney's fees and cost provision (see Exhibit E, "Deed of Trust", Page 4 of 6, ¶10) for the benefit of Defendants.

33.     As such, under California Civil Code §1717, a reciprocal contractual attorneys' fees statute, the Plaintiff is entitled to reimbursement of attorney's fees.

34.     By statute, pursuant to California Civil Code §2941, Plaintiff is entitled to attorneys fees as the prevailing party in this action.

35.     Therefore, Plaintiff requests an award of attorney's fees, in an amount the court determines to be reasonable, as authorized by the provisions of the contract between Plaintiff and Defendant and pursuance to the California statutes cited herein.

## VI. REQUEST FOR JUDGMENTS AND ORDERS

36.     Based on the foregoing, Plaintiff requests that the Court enter a final judgment which:

    a.     Grants Declaratory relief that the order of the Honorable Robert S. Bardwil on July 14, 2009, was a final non-appealable order in determining the secured status of Defendants lien as zero;

    b.     Grants Declaratory relief that the Plaintiff has completed their confirmed plan and granted a discharge, that the debt and security interest therein has been discharged and the lien is void;

---

**First Amended Adversary Complaint – Lien Stripping**

**-10-**

c.   Grants Declaratory relief for a judgment in a format allowed for recording that voids the Deed of Trust of Defendant;

d.   Attorney's fees and costs as allowed for in the contract between Plaintiff and Defendant and pursuant to California Civil Code §2941;

e.   A statutory penalty of $500.00 pursuant to California Civil Code §2941;

f.   Injunctive Relief pursuant to Business and Professions Code §17200 et seq.

g.   Punitive Damages of $500,000.00 related to slander of title;

h.   Damages, in an amount to be proven at trial;

i.   For such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: January 5, 2016          **CIANCHETTA AND ASSOCIATES**


/s/ Peter Cianchetta_____
Peter Cianchetta, Attorney for
Gil Mariano Raposo and Joanne Carol Raposo

**First Amended Adversary Complaint – Lien Stripping**

-11-

## Exhibits

| Exhibit | Description |
|---------|-------------|
| A | Plan of Debtor |
| B | Order Confirming Plan |
| C | Copy of the Order ordering that the SECOND DEED OF TRUST had a secured value of zero. |
| D | Copy of Note and First Deed of Trust |
| E | Copy of Second Deed of Trust |
| F | Discharge |

# EXHIBIT A

Case 09-27153     Filed 04/16/09     Doc 5

**United States Bankruptcy Court**
**Eastern District of California**

```
2009-27153
    FILED
 April 16, 2009
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
      0001775889
```

IN RE:                                                    Case No. _____

Raposo, Gil Maraino & Raposo, Joanne Carol               Chapter **13**
_____
              Debtor(s)

Last 4 digits of Soc. Sec. No.: **8089**
Last 4 digits of Soc. Sec. No.: **9335**

**CHAPTER 13 PLAN**
☒ **MOTION(S) TO VALUE COLLATERAL AND**
☐ **MOTION(S) TO AVOID LIENS**
[check if motion(s) appended]

**THIS PLAN AND THESE MOTIONS WILL BE CONSIDERED FOR CONFIRMATION AND APPROVAL AT A COURT HEARING. YOU WILL BE NOTIFIED OF THE HEARING DATE, TIME, LOCATION, AND THE DEADLINE FOR FILING AND SERVING WRITTEN OBJECTIONS. IN THE ABSENCE OF A TIMELY OBJECTION, THE COURT MAY DISPENSE WITH THE HEARING.**

Debtor proposes the following Chapter 13 Plan effective from the date of the petition:

### Section I. Summary of Relevant Financial Information

| | | |
|---|---|---|
| **1.01.** Annualized current monthly income under section 1325(b)(4), Line 15, Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Statement of CMI"). | $ | **97,059.96** |
| **1.02.** Annualized current monthly income under section 1325(b)(3), Line 21, Statement of CMI. | $ | **97,059.96** |
| **1.03.** Applicable median family income, Line 16, Statement of CMI. | $ | **77,014.00** |
| **1.04.** Monthly net income from Line 20c of Schedule J. | $ | **3,000.00** |
| **1.05.** check applicable box and insert appropriate dollar amount<br>☒ If annualized current monthly income is greater than applicable median family income, projected monthly disposable income from Line 59 Statement of CMI.<br>*- or -*<br>☐ If annualized current monthly income is equal to or less than applicable median family income, projected monthly disposable income calculated without reference to section 707(b)(2)(A) & (B). | $ | **0.00** |
| **1.06.** The amount entered at section 1.05 multiplied by the commitment period (section 2.03). | $ | **0.00** |
| **1.07.** The total amount that would be paid to unsecured, nonpriority claims if the estate of Debtor were liquidated under chapter 7 of the Bankruptcy Code. | $ | **0.00** |

### Section II. Plan Payments and Commitment Period
*[If sections 2.01, 2.02, or 2.03 are blank, refer to the "Additional Provisions" below.]*

**2.01. Payments from earnings.** To complete this plan, Debtor shall submit to the supervision and control of Trustee on a monthly basis a portion of Debtor's future earnings. Debtor shall pay to Trustee the sum of $ **3,000.00** each month. The monthly plan payment is subject to adjustment pursuant to section 3.10(d) below. Monthly plan payments must be received by Trustee not later than the 25th day of each month beginning the month after the petition is filed. The monthly plan payment includes all monthly contract installments due on Class 1 secured claims and adequate protection payments due on certain Class 2 secured claims, if any.

**2.02. Other payments.** In addition to the submission of future earnings, Debtor will make monthly payment(s) derived from property of the bankruptcy estate, property of Debtor, or from other sources, as follows:

**2.03. Commitment period.** The monthly plan payments will continue for **60** months, the commitment period of the plan. Monthly plan payments must continue for the entire commitment period unless all allowed unsecured claims are paid in full over a shorter period of time. If necessary to complete this plan, Debtor may make monthly payments for up to 6 months beyond the commitment period, but in no event shall monthly payments continue for more than 60 months.

### Section III. Claims and Expenses

#### A. Proofs of Claim

**3.01.** A timely proof of claim must be filed by or on behalf of a creditor, including a secured creditor, before a claim may be paid pursuant to this plan.

**3.02.** Notwithstanding section 3.01, monthly contract installments falling due after the filing of the petition shall be paid to holders of Class 1 and Class 4 claims whether or not they have filed proofs of claim or the plan is confirmed.

**3.03.** Post-petition amounts due on account of domestic support obligations, loans from retirement or thrift savings plans of the types described in section 362(b)(19), and executory contracts and unexpired leases to be assumed shall be paid by Debtor directly to the person or entity entitled to receive such payments whether or not a proof of claim is filed or the plan is confirmed.

**3.04.** The proof of claim, not this plan or the schedules, shall determine the amount and classification of a claim. If a claim is provided for by this plan and a proof of claim is filed, dividends shall be paid based upon the proof of claim unless the granting of a valuation or a lien avoidance motion, or the sustaining of a claim objection, affects the amount or classification of the claim.

#### B. Administrative Expenses

**3.05. Trustee's fees.** Pursuant to 28 U.S.C. § 586(e), Trustee shall receive up to 10% of plan payments, whether made before or after confirmation but excluding direct payments on Class 4 claims.

**3.06. Fees of former chapter 7 trustee.** Payment of compensation of the type described in section 1326(b)(3) shall be limited to the greater of $25, or 5% of the amount payable to nonpriority unsecured creditors divided by the commitment period, each month for the duration of the plan.

**3.07. Administrative expenses.** Except to the extent the court approves, and the claimant agrees to, a different treatment, and unless section 1326(b)(3)(B) is applicable, approved administrative expenses shall be paid in full through the plan.

**3.08. Debtor's attorney's fees.** Debtor paid an attorney $ <u>**1,200.00**</u> prior to the filing of the petition. Any additional fees the court may approve shall be paid in full through this plan. Debtor estimates that a further $ <u>**2,300.00**</u> in attorney's fees will be incurred throughout this case.

#### C. Secured Claims

**3.09. Class 1. Long-term secured claims that were delinquent when the petition was filed and mature after the last payment under the plan.** This plan will cure all pre-petition arrears but not otherwise modify Class 1 claims. Each claimant will retain its existing lien and receive no less than the equal monthly amount specified below as its plan dividend. Trustee also shall pay all post-petition monthly contract installments falling due on each Class 1 claim.

| Class 1 Creditor's Name / Collateral Description | Monthly Contract Installment | Monthly Late Charge | Pre-petition Arrears | Interest Rate | Monthly Dividend |
|---|---|---|---|---|---|
| 1.  **Countrywide Home / 9090 locust street; 1ST DOT** | 1,930.64 | 100.00 | 10,000.00 | 0.00% | see addt'l provision |

**3.10. Monthly contract installments paid by Trustee on Class 1 claims. (a)** If Debtor makes a partial plan payment that is insufficient to pay all monthly contract installments due on Class 1 claims, these installments will be paid in the order Debtor has listed Class 1 claims above. **(b)** Trustee will not make a partial payment on account of a monthly contract installment. **(c)** If Debtor makes a partial plan payment, or if it is not paid on time, and Trustee is unable to pay timely a monthly contract installment due on a Class 1 claim, Debtor's cure of this default must be accompanied by the applicable late charge(s). **(d)** Upon their receipt, Debtor shall mail or deliver to Trustee all notices from Class 1 creditors including, without limitation, statements, payment coupons, impound and escrow notices, default notifications, and notices concerning changes of the interest rate on variable interest rate loans. The automatic stay is modified to permit the sending of such notices. Prior to mailing or delivering any such notice to Trustee, Debtor shall affix the chapter 13 case number to it. If any such notice advises Debtor that the amount of the contract installment payment has increased or decreased, the plan payment shall be adjusted accordingly.

**3.11. Class 2. Secured claims that are modified by this plan, or that have matured or will mature before the plan is completed.** Each Class 2 claim will be paid in full, retain its existing lien, and receive no less than the equal monthly amount specified below as its plan dividend. The amount of a Class 2 claim shall be the amount due under any contract between Debtor and the claimant or under applicable nonbankruptcy law, or, if section 506(a) is applicable, the value of the collateral securing the claim, whichever is less.

Section 506(a) is not applicable if the claim is secured by a purchase money security interest and **(a)** was incurred within 910 days of the filing of the petition and is secured by a motor vehicle acquired for the personal use of Debtor, or **(b)** the claim was incurred within 1-year of the filing of the petition and is secured by any other thing of value.

| Class 2 Creditor's Name / Collateral Description | Purchase Money Security Interest? (Y/N) | Is Claim Subject to § 506(a)? Y/N | Claim Amount | Interest Rate | Monthly Dividend |
|---|---|---|---|---|---|
| 1.   County Of Sacramento / 9090 locust street; p/taxes | N | N | 3,000.00 | 6.00% | 58.00 |
| 2.   Dell Preferred Account / computer; | Y | Y | 500.00 | 6.00% | 15.00 |
| 3.   IndyMac Bank / 9090 locust street, elk grove, ca; 2nd dot | Y | Y | 0.00 | 0.00% | 0.00 |
| 4.   Toyota Financial Services / 2005 Toyota Pickup, | Y | Y | 10,000.00 | 5.00% | 237.00 |
| 5.   Toyota Financial Services / 2008 toyota highlander, | Y | N | 8,711.03 | 5.00% | 175.00 |
| 6.   Wells Fargo Financial National / furniture; pmsi & +1yr | Y | Y | 500.00 | 6.00% | 15.00 |

**3.12. Adequate protection payments.** Prior to confirmation, Trustee shall pay on account of each allowed Class 2 claim secured by a purchase money security interest in personal property an adequate protection payment as required by section 1326(a)(1)(C). This adequate protection payment shall be the equal monthly amount proposed by this plan as the dividend for each Class 2 claim. Adequate protection payments shall be disbursed by Trustee in connection with his customary month end disbursement cycle beginning the month after the petition is filed. If a Class 2 claimant is paid a monthly adequate protection payment, that claimant shall not be paid a monthly dividend after confirmation for the same month.

**3.13. Post-petition interest** shall accrue on Class 1 and 2 claims at the above rates. If the plan specifies a "0%"rate, no interest will accrue. However, if the provision for interest is left blank, interest at the rate of 10% per year will accrue.

**3.14. Class 3. Secured claims satisfied by the surrender of collateral.** Entry of the confirmation order shall constitute an order modifying the automatic stay to allow the holder of a Class 3 secured claim to repossess, receive, take possession of, foreclose upon, and exercise its rights and judicial and nonjudicial remedies against its collateral.

| Class 3 Creditor's Name / Collateral Description | Estimated Deficiency | Is Deficiency a Priority Claim? Y/N |
|---|---|---|
| 1.   None | | |

**3.15. Class 4. Secured claims paid directly by Debtor or third party.** Class 4 claims mature after the completion of this plan, are not in default, and are not modified by this plan. These claims shall be paid by Debtor or a third person whether or not the plan is confirmed. Entry of the confirmation order shall constitute an order modifying the automatic stay to allow the holder of a Class 4 secured claim to exercise its rights against its collateral in the event of a default under the terms of its loan or security documentation provided this case is then pending under chapter 13.

| Class 4 Creditor's Name | Monthly Contract Installment | Maturity Date |
|---|---|---|
| 1.   None | | |

**3.16.** Secured claims not listed as Class 1, 2, 3, or 4 claims are not provided for by this plan. The failure to provide for a secured claim in one of these classes may be cause to terminate the automatic stay.

<u>D. Unsecured Claims</u>

**3.17. Class 5. Unsecured claims** entitled to priority pursuant to section 507 shall be paid in full except as provided in section 3.18.

| Class 5 Creditor's Name | Type of Priority | Claim Amount |
|---|---|---|
| 1.   Franchise Tax Board | Taxes | 1,500.00 |
| 2.   Internal Revenue Services | Taxes | 1,500.00 |

**3.18.** If the holder of a priority claim has agreed to accept less than payment in full, or if this plan will not pay a priority claim of the type described in section 1322(a)(4) in full, the identity of the claim holder and the treatment proposed shall be included in the Additional Provisions below. The failure to provide a treatment for a priority claim that complies with sections 1322(a)(2) or 1322(a)(4) is a breach of this plan.

**3.19. Class 6. Special unsecured claims.** This class includes unsecured claims, such as co-signed unsecured debts, that will be paid in full even though all other unsecured claims may not be paid in full.

| Class 6 Creditor's Name | Reason for Special Treatment | Claim Amount |
|---|---|---|
| 1.   None | | |

**3.20. Class 7. General unsecured claims.** Claims not listed as Class 5 or 6 claims, and that are not secured by property belonging to Debtor, will receive no less than a **0.00** % dividend pursuant to this plan. Debtor estimates that general unsecured claims, including the under-collateralized portion of secured claims not entitled to priority, total $ **94,436.79**.

### Section IV. Executory Contracts And Unexpired Leases

**4.01.** Debtor assumes the executory contracts and unexpired leases listed below. Debtor shall pay directly to the other party to the executory contract or unexpired lease, before and after confirmation, all post-petition payments. Unless a different treatment is required by section 365(b)(1) (which such treatment shall be set out in the Additional Provisions) any pre-petition arrears shall be paid in full either as a Class 1 or a Class 6 claim.

**4.02.** Any executory contract or unexpired lease not listed in the table below is rejected. Entry of the confirmation order modifies the automatic stay to allow the nondebtor party to a rejected unexpired lease to obtain possession of leased property.

| Name of Other Party to Executory Contract or Unexpired Lease | Pre-petition Arrears | Regular Payment | Will Arrears Be Paid as a Class 1 or 6 Claim? |
|---|---|---|---|
| 1.   None | | | |

### Section V. Payment of Claims and Order of Payment

**5.01.** After confirmation of this plan, funds available for distribution will be paid monthly by Trustee to holders of allowed claims and approved expenses.

**5.02. Distribution of plan payment.** Each month, the plan payments (see sections 2.01 and 2.02) must equal at least the aggregate of: (a) Trustee's fees; (b) any monthly contract installments due on Class 1 claims; (c) $ **255.00** for administrative expenses described in section 3.06, 3.07, and 3.08, distributed between administrative claimants as specified in section 5.03; and (d) the monthly dividends specified above for Class 1 arrearage claims and Class 2 secured claims. To the extent the plan payments are not needed to pay contract installments on Class 1 claims, approved administrative expenses, Class 1 arrearage claims, or Class 2 secured claims, they shall be distributed on a pro rata basis first to Class 5 priority claims, second to holders of Class 6 unsecured claims, and third to Class 7 unsecured claims.

**5.03. Priority of payment among administrative expenses.** The portion of the monthly plan payment allocated in section 5.02 for administrative expenses of the types described in section 3.06, 3.07, and 3.08 shall be distributed first on account of the monthly dividend due to a former chapter 7 trustee pursuant to section 3.06, then to holders of administrative expenses described in sections 3.07 and 3.08 on a pro rata basis.

**5.04.** Distributions on account of a Class 1, 2, 5, 6, or 7 allowed claim will be based upon the claim as demanded in the proof of claim rather than as estimated and characterized by this plan except to the extent the disposition of a claim objection, motion to value collateral, or lien avoidance motion requires otherwise.

### Section VI. Miscellaneous Provisions

**6.01. Vesting of property.** Any property of the estate scheduled under section 521 shall [*choose one*] ☒ revest in Debtor on confirmation or ☐ not revest in Debtor until such time as a discharge is granted. In the event the case is converted to a case under Chapter 7, 11, or 12 of the Bankruptcy Code or is dismissed, the property of the estate shall be determined in accordance with applicable law.

**6.02. Debtor's duties.** In addition to the duties imposed upon Debtor by the Bankruptcy Code and Rules, the Local Bankruptcy Rules, and General Order 05-03, this plan imposes the following additional requirements on Debtor: **(a) Transfers of property and new debt.** Debtor is prohibited from transferring, encumbering, selling, or otherwise disposing of any personal or real property with a

value of $1,000 or more other than in the regular course of Debtor's financial or business affairs without first obtaining court authorization. Except as provided in sections 364 and 1304, Debtor shall not incur aggregate new debt exceeding $1,000 without first obtaining court authorization. If Trustee approves a proposed transfer or new debt, court approval may be obtainable without a hearing. To determine the appropriate procedure, Debtor should consult the General Order. A new consumer debt of less than $1,000 shall not be paid through this plan absent compliance with sections 1305(c). **(b) Insurance.** Debtor shall maintain insurance as required by any law or contract and Debtor shall provide evidence of that insurance as required by section 1326(a)(4). **(c) Compliance with applicable non-bankruptcy law.** Debtor's financial and business affairs shall be conducted in accordance with applicable non-bankruptcy law including the timely filing of tax returns and payment of taxes. **(d) Periodic reports.** Upon Trustee's request, Debtor shall provide Trustee with a copy of any tax return, W-2 form, and 1099 form filed or received while the case is pending, and furnish Trustee with quarterly financial information regarding Debtor's business or financial affairs. **(e) Documents required by Trustee.** Debtor shall provide to Trustee not later than the 15 days after the filing of the petition with written notice of the name and address of each person to whom Debtor owes a domestic support obligation together with the name and address of the relevant State child support enforcement agency [see 42 U.S.C. §§ 464 & 466], and a Class 1 Worksheet and Authorization to Release Information for each Class 1 claim.

**6.03. Remedies on default.** If Debtor defaults under this plan, or if the plan will not be completed within six months of its stated term, not to exceed 60 months, Trustee or any other party in interest may request appropriate relief by filing a motion and setting it for hearing pursuant to Local Bankruptcy Rule 9014-1. This relief may consist of, without limitation, dismissal of the case, conversion of the case to chapter 7, or relief from the automatic stay to pursue rights against collateral. If, on motion of a creditor, the court terminates the automatic stay to permit a creditor holding a Class 1 or 2 secured claim to proceed against its collateral, unless the court orders otherwise, Trustee shall make no further plan payments on account of such secured claim, any portion of the secured claim not previously satisfied under this plan shall be satisfied as a Class 3 claim, and any deficiency remaining after the disposition of the collateral shall be satisfied as a Class 7 unsecured claim provided a timely proof of claim or amended proof of claim is filed and served on Debtor and Trustee.

### Section VII. Additional Provisions

**7.01.** Other than to insert text into the designated spaces, to expand the tables to include additional claims, or to change the title to indicate the plan is a modified plan, the preprinted language of this form shall not be altered. This does not mean that Debtor is prohibited from proposing additional or different plan provisions. As long as consistent with the Bankruptcy Code, Debtor may propose additional or different plan provisions or specify that any of the above provisions will not be applicable. Each such provision or deletion shall be set out on a separate page and shall be identified by a section number (7.02, 7.03, etc.).

**7.02 Class 1 claims shall receive equal periodic payments of $255 per month starting 10th month.**


Dated: 4-15-09


                                        /s/Gil Raposo _____
                                        Signature of Debtor



                                        /s/Joanne Raposo _____
                                        Signature of Spouse (if applicable)


**Law Office Peter Macaluso**
**910 Florin Rd., Ste. 111**
**Sacramento, CA  95831**
**(916) 392-6591**
**(916) 392-6590**

**ATTACHMENT M-3**
Optional – Discard if not used
**MOTIONS TO VALUE COLLATERAL**
**(Pursuant to subsections (a) and (d) of 11 U.S.C. § 506**
**and Federal Rule of Bankruptcy Procedure 3012)**

**(A separate motion must be filed as to each creditor)**
**NUMBER OF MOTIONS TO VALUE COLLATERAL IN THIS PLAN: 4**

---

**NOTICE IS HEREBY GIVEN** that Debtor requests the court to value the property described below. This property secures the claim of the creditor named below. Debtor also requests that the amount of the creditor's secured claim not exceed the value of its security, less the claims of creditors holding senior liens or security interests. This determination will supercede any greater secured claim demanded in a proof of claim. Any objections to the creditor's claim are reserved and will be filed after the creditor has filed a proof of claim. In the opinion of the debtor, the collateral has the replacement value indicated below.

Name of the creditor whose collateral is being valued by this motion:
**IndyMac Bank**

Total amount of this creditor's claim:                                   **$ 50,560.52**
Description of collateral [*For vehicles include the mileage on the date of the petition and a list of optional equipment. For real property, state the street address and a brief description of it such as "single family residence" or "ten-acre undeveloped lot"*]:

**9090 locust street, elk grove, ca**
**single family dwelling**

debtor's opinion of value is $187,000.00

The amount owed to and the name of all creditors holding liens or security interests senior to the lien or security interest of the above-named creditor:

| Name of Creditor | Amount of Claim |
|---|---|
| **Countrywide Home Loans** | **235,557.33** |

Debtor's opinion of the collateral's "replacement value":                **$ 0.00**
        [as defined and limited by section 506(a)(2)]
Other information relevant to the resolution of this motion:

I (we) declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 4-15-09

/s/Gil Raposo
Debtor

/s/Joanne Raposo
Joint Debtor

**ATTACHMENT M-3**
Optional – Discard if not used
**MOTIONS TO VALUE COLLATERAL**
**(Pursuant to subsections (a) and (d) of 11 U.S.C. § 506**
**and Federal Rule of Bankruptcy Procedure 3012)**

**(A separate motion must be filed as to each creditor)**
**NUMBER OF MOTIONS TO VALUE COLLATERAL IN THIS PLAN: 4**

---

**NOTICE IS HEREBY GIVEN** that Debtor requests the court to value the property described below. This property secures the claim of the creditor named below. Debtor also requests that the amount of the creditor's secured claim not exceed the value of its security, less the claims of creditors holding senior liens or security interests. This determination will supercede any greater secured claim demanded in a proof of claim. Any objections to the creditor's claim are reserved and will be filed after the creditor has filed a proof of claim. In the opinion of the debtor, the collateral has the replacement value indicated below.

Name of the creditor whose collateral is being valued by this motion:
**Dell Preferred Account**

Total amount of this creditor's claim:                                                    **$3,025.50**
Description of collateral [*For vehicles include the mileage on the date of the petition and a list of optional equipment. For real property, state the street address and a brief description of it such as "single family residence" or "ten-acre undeveloped lot"*]:
**computer;**
**pmsi & +1 yr.**

The amount owed to and the name of all creditors holding liens or security interests senior to the lien or security interest of the above-named creditor:

| Name of Creditor | Amount of Claim |
|---|---|
|  |  |

Debtor's opinion of the collateral's "replacement value":                          **$500.00**
        [as defined and limited by section 506(a)(2)]
Other information relevant to the resolution of this motion:

I (we) declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 4-15-09

/s/Gil Raposo
Debtor

/s/Joanne Raposo
Joint Debtor

**ATTACHMENT M-3**
Optional – Discard if not used
**MOTIONS TO VALUE COLLATERAL**
(Pursuant to subsections (a) and (d) of 11 U.S.C. § 506
and Federal Rule of Bankruptcy Procedure 3012)

(A separate motion must be filed as to each creditor)
**NUMBER OF MOTIONS TO VALUE COLLATERAL IN THIS PLAN: 4**

---

**NOTICE IS HEREBY GIVEN** that Debtor requests the court to value the property described below. This property secures the claim of the creditor named below. Debtor also requests that the amount of the creditor's secured claim not exceed the value of its security, less the claims of creditors holding senior liens or security interests. This determination will supercede any greater secured claim demanded in a proof of claim. Any objections to the creditor's claim are reserved and will be filed after the creditor has filed a proof of claim. In the opinion of the debtor, the collateral has the replacement value indicated below.

Name of the creditor whose collateral is being valued by this motion:
**Wells Fargo Financial National**

Total amount of this creditor's claim:                                        **$2,254.46**
Description of collateral [*For vehicles include the mileage on the date of the petition and a list of optional equipment. For real property, state the street address and a brief description of it such as "single family residence" or "ten-acre undeveloped lot"*]:
**furniture; pmsi & +1yr**

The amount owed to and the name of all creditors holding liens or security interests senior to the lien or security interest of the above-named creditor:

| Name of Creditor | Amount of Claim |
|---|---|
|  |  |

Debtor's opinion of the collateral's "replacement value":                    **$500.00**
        [as defined and limited by section 506(a)(2)]
Other information relevant to the resolution of this motion:

I (we) declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 4-15-09

/s/Gil Raposo
Debtor

/s/Joanne Raposo
Joint Debtor

**ATTACHMENT M-3**
Optional – Discard if not used
**MOTIONS TO VALUE COLLATERAL**
**(Pursuant to subsections (a) and (d) of 11 U.S.C. § 506**
**and Federal Rule of Bankruptcy Procedure 3012)**

**(A separate motion must be filed as to each creditor)**
**NUMBER OF MOTIONS TO VALUE COLLATERAL IN THIS PLAN: <u>4</u>**

---

**NOTICE IS HEREBY GIVEN** that Debtor requests the court to value the property described below. This property secures the claim of the creditor named below. Debtor also requests that the amount of the creditor's secured claim not exceed the value of its security, less the claims of creditors holding senior liens or security interests. This determination will supercede any greater secured claim demanded in a proof of claim. Any objections to the creditor's claim are reserved and will be filed after the creditor has filed a proof of claim. In the opinion of the debtor, the collateral has the replacement value indicated below.

Name of the creditor whose collateral is being valued by this motion:
**Toyota Financial Services**

Total amount of this creditor's claim:                                          **$16,815.00**
Description of collateral [*For vehicles include the mileage on the date of the petition and a list of optional equipment. For real property, state the street address and a brief description of it such as "single family residence" or "ten-acre undeveloped lot"*]:
**2005 Toyota Pickup,**
**39k miles, fair condition**
debtor's opinion of retail value without reconditioning

The amount owed to and the name of all creditors holding liens or security interests senior to the lien or security interest of the above-named creditor:

<u>Name of Creditor</u>                                                    <u>Amount of Claim</u>

Debtor's opinion of the collateral's "replacement value":                **$ <u>12,000.00</u>**
        [as defined and limited by section 506(a)(2)]
Other information relevant to the resolution of this motion:

I (we) declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 4-15-09

/s/Gil Raposo
Debtor

/s/Joanne Raposo
Joint Debtor

# EXHIBIT B

2009-27153
FILED
June 11, 2009
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0001884781

1  2
Law Offices of Peter G. Macaluso
2  Peter G. Macaluso #215730
910 Florin Road #111
3  Sacramento, CA 95831
916-392-6591
4  916-392-6590 Facsimile

5  Attorney for Debtors

6

7

8                        UNITED STATES BANKRUPTCY COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11  In re:                          Case No. 09-27153-D-13L

12  Raposo, Gil M. &
13    SS#XXX-XX-8089

14  Raposo, Joanne C.
15    SS#XXX-XX-9335

16  _____Debtors_____/

**ORDER CONFIRMING PLAN AND VALUING COLLATERAL**
17  **FILED ON APRIL 16, 2009**

18      The Chapter 13 plan of the above-named debtor(s) has been
transmitted to all creditors, and it has been determined after
19  notice and opportunity for a hearing that the debtor(s) plan
satisfies the requirements of 11 U.S.C. § 1325.

20
    Therefore,  **IT IS ORDERED** that the plan is confirmed.
21
    **IT IS FURTHER ORDERED** that:
22      1.   The debtor shall immediately notify, in writing, the
Clerk of the United States Bankruptcy Court and the trustee of any
23  change in the debtor's address;
        2.   The debtor shall immediately notify the trustee in
24  writing of any termination, reduction of, or other change in the
employment of the debtor; and
25      3.   The debtor shall appear in court whenever notified to do
so by the court.

26

27      **IT IS FURTHER ORDERED** that the attorney's fees for the
debtor's attorney in the full amount of $ 3,500.00  are approved,
28  $ 1,200.00  of which was paid prior to the filing of

RECEIVED
June 10, 2009
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0001884781

1  the petition.   The balance of $ 2,300.00 , provided that the
   attorney and debtor have executed and filed a Rights and
2  Responsibilities of Chapter 13 Debtors and Their Attorneys, shall
   be paid by the trustee from plan payments at the rate specified in
3  the Guidelines for Payment of Attorneys' Fees in Chapter 13 Cases.

4      **IT IS FURTHER ORDERED** that, pursuant to 11 U.S.C. § 1323, the
   plan is amended as follows:

5

6

7

8
       **IT IS FURTHER ORDERED** that the motion to value the collateral
9  of  Dell Preferred Account  is granted.  The replacement value of
   the collateral and the secured claim of such creditor is determined
10 to be $ 500.00  and the deficiency shall be allowed as a general
   unsecured claim provided that a timely proof of claim is filed.

11
       **IT IS FURTHER ORDERED** that the motion to value the collateral
12 of  Wells Fargo Financial Bank  is granted.  The replacement value
   of the collateral and the secured claim of such creditor is
13 determined to be $ 500.00  and the deficiency shall be allowed as
   a general unsecured claim provided that a timely proof of claim is
14 filed.

15     **IT IS FURTHER ORDERED** that the motion to value the collateral
   of Toyota Financial Services  is granted.  The replacement value
16 of the collateral and the secured claim of such creditor is
   determined to be $ 12,000.00  and the deficiency shall be allowed
17 as a general unsecured claim provided that a timely proof of claim
   is filed.

18

19

20  _____
   Approved by the Chapter 13
21 Trustee as to form.

22

23
       **Dated:** June 11, 2009
24

25 DAT

26                                    _____
                                       Robert S. Bardwil, Judge
27                                    United States Bankruptcy Court

28

**EXHIBIT C**

2009-27153
FILED
July 14, 2009
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0001950240

Law Offices of Peter G. Macaluso
Peter G. Macaluso #215730
910 Florin Road #111
Sacramento, CA 95831
916-392-6591
916-392-6590 Facsimile

Attorney for Debtors
Gil & Joanne Raposo

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

IN THE MATTER OF

GIL RAPOSO
SS# XXX-XX-8089

JOANNE RAPOSO
SS# XXX-XX-9335

_____Debtors_____/

CASE NO. 09-27153-D-13L

DCNO#: PGM-1
DATE:   JULY 7, 2009
TIME:   1:00 P.M.
DEPT#:  D - COURTROOM 34
HONORABLE JUDGE BARDWIL

ORDER ON MOTION TO VALUE COLLATERAL OF

ONEWEST BANK, FSB

     On July 7, 2009 the matter of Debtors' Motion to Value
Collateral came before the Court and due notice having been given,
and good cause appearing;

     IT IS ORDERED that the Motion is granted, the creditor's
secured claim is valued at $0.00 and shall be paid in accordance
with the terms of the Plan.

D Dated: July 14, 2009

Robert S. Bardwil, Judge
United States Bankruptcy Court

RECEIVED
July 13, 2009
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0001950240

# EXHIBIT D

Case 09-27153    Filed 05/14/09    Claim 3-1

 

# NOTE





July 20, 2005                     Simi Valley                     California
[Date]                            [City]                          [State]

9090 Locust Street, Elk Grove, CA 95624
[Property Address]

**1.    BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $    246,300.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is    IndyMac Bank, F.S.B., a federally chartered savings bank    . I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    5.750    %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.    PAYMENTS**
**(A)  Time and Place of Payments**
I will pay Principal and interest by making a payment every month.
I will make my monthly payment on the    1st    day of each month beginning on    September, 2005    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    August  1, 2035    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at    IndyMac Bank, F.S.B., P.O. Box 78826, Phoenix, AZ 85062-8826    or at a different place if required by the Note Holder.

**(B)  Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $    1,437.34    .

**4.    BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

Loan No: ████████              MIN: 100055401216372989

Multistate Fixed Rate Note—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     Form 3200 01/01
—THE COMPLIANCE SOURCE, INC.—                              Page 1 of 3                              14301MU 08/00
www.compliancesource.com                                                                    ©2000, The Compliance Source, Inc.

EXHIBIT   2

Case 09-27153    Filed 05/14/09    Claim 3-1

 

**5.    LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.    BORROWER'S FAILURE TO PAY AS REQUIRED**
    **(A) Late Charge for Overdue Payments**
    If the Note Holder has not received the full amount of any monthly payment by the end of        **15**      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     **5.000**     % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
    **(B) Default**
    If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
    **(C) Notice of Default**
    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
    **(D) No Waiver By Note Holder**
    Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
    **(E) Payment of Note Holder's Costs and Expenses**
    If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.    GIVING OF NOTICES**
    Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
    Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**
    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.    WAIVERS**
    I and any other person who has obligations under this Note waive the rights of presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.    UNIFORM SECURED NOTE**
    This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same
    Loan No: ██████

Multistate Fixed Rate Note—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3200 01/01
—THE COMPLIANCE SOURCE, INC.—                    Page 2 of 3                    14503MU 08/00
    www.compliancesource.com                    ©2000, The Compliance Source, Inc.



. . .

4

**EXHIBIT    2**

 

date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
Gil M. Raposo          -Borrower      Joanna C. Raposo          -Borrower

_____ (Seal)        _____ (Seal)
                       -Borrower                                -Borrower

Pay To The Order Of

Without Recourse
IndyMac Bank, F.S.B.                    [Sign Original Only]
By: _____
Tom Green
Assistant Secretary
IndyMac Bank, F.S.B.

Loan No.: _____

Multistate Fixed Rate Note—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200 01/81
—THE COMPLIANCE SOURCE, INC.—                                Page 3 of 3                    _____
www.compliancesource.com                                                                    ©2003, The Compliance Source, Inc.

5

EXHIBIT 2

## SCHEDULE "A"

THE REAL PROPERTY IN THE COUNTY OF SACRAMENTO STATE OF CALIFORNIA
DESCRIBED AS THE NORTH 1/2 OF LOT 20 OF J.M. KERR'S ADDITION TO
ELK GROVE, ACCORDING TO THE OFFICIAL PLAT THEREOF, FILED IN THE
OFFICE OF THE RECORDER OF SACRAMENTO COUNTY, CALIFORNIA, IN BOOK
1 OF MAPS, MAP NO. 28.

SOURCE OF TITLE: DOCUMENT NO. 144642 (RECORDED 07/01/88)
APN: 125-0283-017

Case 09-27153    Filed 05/14/09    Claim 3-1

Recording Requested By:
IndyMac Bank, F.S.B. c/o Document

*[Company Name]*

And When Recorded Mail To:
IndyMac Bank, F.S.B. c/o Document

*[Company Name]*

*[Name of Natural Person]*
3465 E. Foothill Blvd.

*[Street Address]*

Pasadena, CA 91107

*[City, State Zip Code]*

Sacramento County Recording
Mark Harris, Clerk/Recorder
BOOK **20050729** PAGE **1573**

Check Number 1352
Friday, JUL 29, 2005 10:33:60 AM
Ttl Pd  $48.60  Nbr-0023744522

HKD/55/1-14

_____ cording Data] _____

D2 001 002 .UST

610

**DEFINITIO**

MIN: ~~100000000000000000~~

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated      July 20, 2005 together with all Riders to this document.

**(B)** "Borrower" is   Gil M. Raposo and Joanne C. Raposo, Husband and Wife As Joint Tenants

     . Borrower is the trustor under this Security Instrument.

**(C)** "Lender" is   IndyMac Bank, F.S.B., a federally chartered savings bank

Lender is a     Federal Savings Bank        organized and existing under the laws of United States of America     . Lender's address is   155 North Lake Avenue, Pasadena, CA 91101

**(D)** "Trustee" is   First American Title Insurance Company

**(E)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Loan No: 121637298

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—          Page 1 of 13          14301CA 02/00
www.compliancesource.com                               ©2000, The Compliance Source, Inc.

EXHIBIT   3

(F)    "Note" means the promissory note signed by Borrower and dated    **July 20, 2005**    . The Note states that Borrower owes Lender    **two hundred forty six thousand three hundred and NO/100ths**    Dollars (U.S. $ 246,300.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    **August 1, 2035**

(G)    "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)    "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider                  ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☐ 1-4 Family Rider               ☐ Revocable Trust Rider
☐ Other(s) [specify]

(J)    "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)    "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)    "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)    "Escrow Items" means those items that are described in Section 3.

(N)    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)    "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)    "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)    "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)    "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

EXHIBIT    3

Filed 01/05/16     Case 15-02095     Doc 77

EXHIBIT 1

6

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

      County       of       SACRAMENTO

    *[Type of Recording Jurisdiction]*     *[Name of Recording Jurisdiction]*

See Exhibit "A" attached hereto and made a part hereof.

APN#: 125-0253-017-000

Assessor's Identification Number:    125-0253-017-000

which currently has the address of    9090 Locust Street

      *[Street]*

ELK GROVE       , California       95624       ("Property Address"):

   *[City]*                 *[Zip Code]*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any

Loan No: _____

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      www.compliancesource.com
MERS Modified Form 3005 01/01    Page 3 of 15      —THE COMPLIANCE SOURCE, INC.—
     14301CA 08/00      © 2002, The Compliance Source, Inc.

Case 09-27153    Filed 05/14/09    Claim 3-1

payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

Loan No: ~~●●●●●●●●~~

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 4 of 13

MERS Modified Form 3005 01/01
14301CA 02/00
© 2000, The Compliance Source, Inc.

EXHIBIT     3

Filed 01/05/16                    Case 15-02095                    Doc 77

EXHIBIT - 3

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.  Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.  Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds,

Loan No:

Colorado Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3006 01/01
—THE COMPLIANCE SOURCE, INC.—                    Page 5 of 13                    © 2001, The Compliance Source, Inc.

EXHIBIT 3

whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or

MERS Modified of Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Page 6 of 13    MERS Modified Form 3006 01/01

LOAN NO:    © 2002, The Compliance Source, Inc.    www.compliancesource.com    —THE COMPLIANCE SOURCE, INC.—

EXHIBIT 3

obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such

—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
©2001, The Compliance Source, Inc.

EXHIBIT 3

14

Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

Loan No:

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    MERS Modified Form 3005 01/01

Page 8 of 15

—THE COMPLIANCE SOURCE, INC.—

© 2002, The Compliance Source, Inc.

www.compliancesource.com

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Loan  Nos. ~~~~~~~~~~~

**EXHIBIT    3**

Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period, which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

Loan No: [redacted]

LOAN NO: [illegible]

THE COMPLIANCE SOURCE, INC.

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Page 11 of 13

MERS Modified Form 3005 01/01

© 2004, The Compliance Source, Inc.

www.compliancesource.com

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
Gil M. Raposo         -Borrower
                             [Printed Name]

_____ (Seal)
Joanne C. Raposo        -Borrower
                             [Printed Name]

_____ (Seal)
                             -Borrower
                             [Printed Name]

_____ (Seal)
                             -Borrower
                             [Printed Name]

_____ [Acknowledgment on Following Page] _____

Loan No: ~~_____~~

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT           MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                         Page 12 of 13                       14301CA 08/00
www.compliancesource.com                                           © 2000, The Compliance Source, Inc.

EXHIBIT    3

Case 09-27153     Filed 05/14/09     Claim 3-1

State of _California_

County of _Sacramento_

§
§
§

On _7/21/05_ , before me, _Catalina G. Mercado_                    *[name and title of officer]*
personally appeared     Gil M. Raposo and Joanne C. Raposo

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument in person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature _____     (Seal)

CATALINA G. MERCADO
Comm. # 1355843
NOTARY PUBLIC-CALIFORNIA
County of Sacramento
My Comm. Expires May 17, 2008

## REQUEST FOR FULL RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of _____ County, State of California, in book _____ , page _____ of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

_____          Date: _____
(Trustee)

LOAN NO: _____
California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 13 of 13

MERS Modified Form 3005 01/01
14002CA 08/00
©2000, The Compliance Source, Inc.

EXHIBIT    3

Case 09-27153    Filed 05/14/09    Claim 3-1

Exhibit "A"
~~SCHEDULE~~ "A"

THE REAL PROPERTY IN THE COUNTY OF SACRAMENTO STATE OF CALIFORNIA
DESCRIBED AS THE NORTH 1/2 OF LOT 20 OF J.M. KERR'S ADDITION TO
ELK GROVE, ACCORDING TO THE OFFICIAL PLAT THEREOF, FILED IN THE
OFFICE OF THE RECORDER OF SACRAMENTO COUNTY, CALIFORNIA, IN BOOK
1 OF MAPS, MAP NO. 28.

SOURCE OF TITLE: DOCUMENT NO. 144642 (RECORDED 07/01/88)
APN: 125-0253-017

EXHIBIT  3

# EXHIBIT E

PLEASE COMPLETE THIS INFORMATION

RECORDING REQUESTED BY:

INDY MAC BANK, FSB

AND WHEN RECORDED MAIL TO:

RETURN TO (NLS)
NATIONS TITLE AGENCY INC.
5370 W. 95th ST
SHAWNEE, KS 66207

Sacramento County Recording
Craig A Kramer, Clerk/Recorder
BOOK **20061005** PAGE **0967**

Check Number 2864
Thursday, OCT 05, 2006 12:25:26 PM
Ttl Pd    $48.00         Nbr-0004542435

NLB/11/1-7

SPACE ABOVE FOR RECORDER'S USE ONLY

Deed of Trust 06UL29502

Title of Document

THIS AREA FOR

RECORDER'S

USE ONLY

THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

(Rev. 8/00:hs)                                              (Word/S:/Doc Exam/Cover Sheet)

Loan No.

This document was prepared by Flora Griffin
901 East 104th Street, Building B, Kansas City, MO 64131
Please return this document after recording to:
Indymac Bank, F.S.B. c/o Document
Management
901 E. 104th Street Building B Suite
400/500
Kansas City, MO 64131

RETURN TO (NLS)
NATIONS TITLE AGENCY INC.
5370 W. 95th ST
SHAWNEE, KS 66207

_____ State of California _____    ___ Space Above This Line For Recording Data ___

# DEED OF TRUST
(With Future Advance Clause)
CW136507

1.  **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is _____ October 2, 2006 _____
and the parties, their addresses and tax identification numbers, if required, are as follows:
TRUSTOR: Gil H. Raposo and Joanne C. Raposo, husband and wife, as joint
tenants

    9090 Locust Street, Elk Grove, CA 95624
☐ If checked, refer to the attached Addendum incorporated herein, for additional Trustors, their signatures and
acknowledgments.
TRUSTEE: Old Republic National Title Insurance Company
    5370 West 95th Street, Overland Park, KS 66207

LENDER: IndyMac Bank, F.S.B., a federally chartered savings bank

    155 North Lake Avenue, Pasadena, CA 91101

2.  **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to
secure the Secured Debt (defined below) and Trustor's performance under this Security Instrument, Trustor irrevocably
grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described
property:
THE REAL PROPERTY IN THE COUNTY OF SACRAMENTO, STATE OF CALIFORNIA, DESCRIBED
AS: THE NORTH 1/2 OF LOT 20 OF J.H. KERR'S ADDITION TO ELK GROVE, ACCORDING TO
THE OFFICIAL PLAT THEREOF, FILED IN THE OFFICE OF THE RECORDER OF SACRAMENTO
COUNTY, CALIFORNIA, IN BOOK 1 OF MAPS, MAP NO. 28. APN:125-0253-017-0000.
The property is located in _____ Sacramento _____ at 9090 Locust Street
           (County)

_____    Elk Grove _____ , California   95624
 (Address)         (City)          (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian
rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may
now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3.  **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall
not exceed $ 51,000.00 _____ . This limitation of amount does not include interest and other fees and charges validly
made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this
Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4.  **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
 A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt
 described below and all their extensions, renewals, modifications or substitutions. (Include items such as borrowers'
 names, note or contract amounts, interest rates (whether variable), maturity dates, etc.)
  One certain home equity line of credit agreement dated October 2, 2006
  executed by Gil H. Raposo and Joanne C. Raposo in the amount of $51,000.00
  due and payable in full on November 15, 2026.

CALIFORNIA - HOME EQUITY LINE OF CREDIT DEED OF TRUST (NOT FOR FNMA, FHLMC, FHA OR VA USE)
ExŢŁąŞŕŕ © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REI-DT-CA 5/18/2004
c-465(CA) (04/05)01    VMP Mortgage Solutions, Inc. (800)521-7291


(page 1 of 6)





© 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/4/2004

E-446CA (page 2 of 5)

B. All future advances from Lender to Trustor or other future obligations of Trustor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Trustor in favor of Lender after this Security Instrument. If more than one person signs this Security Instrument, each Trustor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Trustor, or any one or more Trustor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

D. Performance of every obligation in this Security Instrument, subsequent instrument amending that Security Instrument and any instrument now or later evidencing or securing any indebtedness secured by this Security Instrument.

In the event that Lender fails to provide any necessary notice of its right of rescission with respect to any additional indebtedness secured under paragraph B of this Section, Lender waives any subsequent security interest in the Trustor's principal dwelling that is created by this Security Instrument (but does not waive the security interest for the debts referenced in paragraph B of this Section).

5. DEED OF TRUST COVENANTS. Trustor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Trustor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and reduce the credit limit. By not exercising either remedy on Trustor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

Payments. Trustor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

Prior Security Interests. With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Trustor agrees to make all payments when due and to perform or comply with all covenants. Trustor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

Claims Against Title. Trustor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Trustor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Trustor's payment. Trustor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Trustor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Trustor may have against parties who supply labor or materials to maintain or improve the Property.

Property Condition, Alterations and Inspection. Trustor will keep the Property in good condition and make all repairs that are reasonably necessary. Trustor shall not commit or allow any waste, impairment, or deterioration of the Property. Trustor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Trustor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Trustor will notify Lender of all demands, proceedings, claims, and actions against Trustor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Trustor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Trustor will in no way rely on Lender's inspection.

Authority to Perform. If Trustor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Trustor appoints Lender as attorney in fact to sign Trustor's name or pay any amount necessary for performance. Lender's right to perform for Trustor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

Leaseholds; Condominiums; Planned Unit Developments. Trustor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Trustor will perform all of Trustor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

Condemnation. Trustor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Trustor authorizes Lender to intervene in Trustor's name in any of the above described actions or claims. Trustor assigns to Lender the

proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**Insurance.** Trustor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Trustor subject to Lender's approval, which shall not be unreasonably withheld. If Trustor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Trustor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Trustor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Trustor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Trustor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Trustor. If the Property is acquired by Lender, Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**Financial Reports and Additional Documents.** Trustor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Trustor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Trustor's obligations under this Security Instrument and Lender's lien status on the Property.

6. **WARRANTY OF TITLE.** Trustor warrants that Trustor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Trustor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

8. **DEFAULT.** Trustor will be in default if any of the following occur:

**Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

**Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

**Property.** Any action or inaction by the Borrower or Trustor occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Trustor fails to maintain required insurance on the Property; (b) Trustor transfers the Property; (c) Trustor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Trustor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Trustor dies; (f) if more than one Trustor, any Trustor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Trustor and subjects Trustor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

**Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and such Borrower becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

9. **REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Trustor is in default. In some instances, federal and state law will require Lender to provide Trustor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.

At the option of the Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. Lender shall be entitled to, without limitation, the power to sell the Property.

If Lender elects to foreclose by exercise of the power of sale, Lender will declare the entire Secured Debts due and payable by delivering to Trustee this Security Instrument and any evidence of the Secured Debts, receipts and evidence of expenditures made and secured, as Trustee requires. When the legally prescribed time passes after Trustee or Lender duly records a notice of default, the Trustee, Lender or other person authorized to take the sale will give a notice of sale as required by law and will cause the Property to be sold at the time and place fixed in the notice of sale. Lender may rescind any notice of default at any time before the Property's sale. Rescission will occur when Lender executes and records a notice of rescission that cancels any prior notice of default and any related acceleration of the Secured Debts. Lender's rescission will not waive any default then existing or subsequently occurring or preclude Lender exercising its remedies, including the power of sale, at another time.

The Property can be sold as a whole or in separate parcels and in any order that Trustee decides. The Property will be sold to the highest bidder for cash in lawful money of the United States, payable at sale time. The Property can be sold to anyone, including Trustor, Trustee or Lender. Trustee may postpone the sale of any part of the Property by public announcement at the time and place of this sale and afterwards at the time fixed by the preceding postponement. Upon any sale of the Property, Trustee will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Trustee will covenant that Trustee has not caused or allowed a lien or an encumbrance to burden the Property and that Trustee will specially warrant and defend the Property's title to the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Trustee. The deed's recital of facts will be conclusive proof of the truthfulness of these facts.

The proceeds from the Property's sale will be applied to the sale expenses, Trustee's expenses, Lender's attorneys' fees due on Trustor's default, sums that Trustee or Lender paid for procuring a title search of the Property's title subsequent to the execution of this Security Instrument, all outstanding amounts due under this Security Instrument and the remainder to anyone legally entitled to the remaining amounts due.

The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Trustor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

10. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Trustor breaches any covenant in this Security Instrument, Trustor agrees to pay all expenses Lender incurs in performing such covenants (including but not limited to advances and expenses described in the DEED OF TRUST COVENANTS section) or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Lender's security interest. These expenses are payable on demand and will bear interest from the date of payment until paid in full at the highest rate of interest in effect as provided in the terms of the Secured Debt. Trustor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Trustor agrees to pay the reasonable attorneys' fees Lender incurs to collect this Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Trustor agrees to pay for any recordation costs of such release.

11. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Trustor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Trustor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

Express © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/13/2004
C-6885(CA) (0403).01



(page 4 of 6)

C. Trustor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Trustor shall take all necessary remedial action in accordance with any Environmental Law.

D. Trustor shall immediately notify Lender in writing as soon as Trustor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

12. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Trustor will not be required to pay to Lender funds for taxes and insurance in escrow.

13. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Trustor signs this Security Instrument but does not sign an evidence of debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Trustor and Lender.

14. **SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

15. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

16. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one trustor will be deemed to be notice to all trustors. Lender and Trustor request that copies of any notice of default or notice of sale under a superior security instrument be sent to Lender and Trustor at the addresses listed in the DATE AND PARTIES section.

17. **WAIVERS.** Except to the extent prohibited by law, Trustor waives all appraisement or marshalling of assets relating to the Property.

18. **SPOUSE'S SEPARATE PROPERTY.** Any Trustor who is a married person expressly agrees that recourse may be had against his or her separate property.

19. **LINE OF CREDIT.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

20. **APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

21. **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]

☐ Assignment of Leases and Rents    ☐ Other ......... ... .... ...... ..... ...... ...... ..........

22. ☐ **ADDITIONAL TERMS.**

Express © 1994 Bankers Systems, Inc. St. Cloud, MN Form OCP-REDT-CA 3/18/2004
C465(CA) (0431).01

(page 5 of 6)





23. **REQUEST FOR NOTICE.** In accordance with Section 2924n, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded
....N/A.... , in book .... N/A .... , page .... N/A .... , records of
....N/A.... County, (or filed for record with recorder's serial number .... N/A ....
....N/A.... County) California, executed by .... N/A ....
.... as trustor (or mortgagor) in which
....N/A.... , is named as beneficiary (or mortgagee) and
....N/A.... as trustee be mailed to:

Name .... N/A ....
Address .... N/A ....                                                                          at

NOTICE: A copy of any notice of default and of any notice     Signature on behalf of the requester named above:
of sale will be sent only to the address contained in this
recorded request. If your address changes, a new request
must be recorded.                                              Signature .... N/A ....
(Include the requester's name, by the signer, among those acknowledging below, or use a separate acknowledgment form.)

**SIGNATURES:** By signing below, Trustor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Trustor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

_(signature)_                          10/2/06          _(signature)_                          10/2/06
(Signature) G. M. Raposo              (Date)           (Signature) Joanne C. Raposo            (Date)

**ACKNOWLEDGMENT:**
STATE OF _California_ , COUNTY OF _Sacramento_ } ss.
On this _2nd_ day of _October, 2006_ , before me _BJ Braswell_
a notary public, personally appeared _G.M. Raposo, Joanne C Raposo_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/(are) subscribed to the within instrument and acknowledged to me that he/she/(they) executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

[Notary Seal:
BJ BRASWELL
Commission # 1598285
Notary Public - California
Sacramento County
My Comm. Expires Jul 30, 2009]

Signature _(signature)_
Name (typed or printed) _BJ Braswell_
My commission expires: _July 30, 2009_

(Seal)

---

**REQUEST FOR FULL RECONVEYANCE**

To Trustee: The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of ........................ County, State of California, in book ....................
page ............... of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.
Dated: ........................

Assessor's Identification Number     125-0253-017-0000

# EXHIBIT F

FORM L81 Discharge of Debtor After Completion of Chapter 13 Plan  (v.9.14)

09−27153 − E − 13C

## UNITED STATES BANKRUPTCY COURT
### Eastern District of California

**Robert T Matsui United States Courthouse**
**501 I Street, Suite 3−200**
**Sacramento, CA 95814**

(916) 930−4400
www.caeb.uscourts.gov
M−F 9:00 AM − 4:00 PM



# DISCHARGE OF DEBTOR AFTER COMPLETION OF CHAPTER 13 PLAN

**Case Number:**    09−27153 − E − 13C

Debtor Name(s), Social Security Number(s), and Address(es):

Gil Mariano Raposo
xxx−xx−8089

Joanne Carol Raposo
xxx−xx−9335

9090 Locust St
Elk Grove, CA 95624

9090 Locust St
Elk Grove, CA 95624

It appearing that the debtor is entitled to a discharge,

**IT IS ORDERED:**

The debtor is granted a discharge under section 1328(a) of title 11, United States Code, (the Bankruptcy Code).

**SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.**

Dated:
11/3/14

For the Court,
Wayne Blackwelder , Clerk

FORM L81
(Continued)

## EXPLANATION OF BANKRUPTCY DISCHARGE
## IN A CHAPTER 13 CASE

This court order grants a discharge to the person (or persons) named as the debtor (or debtors) after they have completed all payments under the chapter 13 plan. It is not a dismissal of the case.

### Collection of Discharged Debts Prohibited

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. In a case involving community property, there are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case. A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

### Debts That are Discharged

The chapter 13 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt is provided for by the chapter 13 plan or is disallowed by the court pursuant to section 502 of the Bankruptcy Code.

### Debts that are Not Discharged

Some of the common types of debts which are not discharged in a chapter 13 bankruptcy case are:

a. Domestic support obligations;

b. Debts for most student loans;

c. Debts for most fines, penalties, forfeitures, or criminal restitution obligations;

d. Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;

e. Debts for restitution, or damages, awarded in a civil action against the debtor as a result of malicious or willful injury by the debtor that caused personal injury to an individual or the death of an individual (in a case filed on or after October 17, 2005);

f. Debts provided for under section 1322(b)(5) of the Bankruptcy Code and on which the last payment is due after the date on which the final payment under the plan was due;

g. Debts for certain consumer purchases made after the bankruptcy case was filed if prior approval by the trustee of the debtor's incurring the debt was practicable but was not obtained;

h. Debts for most taxes to the extent not paid in full under the plan (in a case filed on or after October 17, 2005); and

i. Some debts which were not properly listed by the debtor (in a case filed on or after October 17, 2005).

**This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.**